**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CURTIS BLOUGH; GWENDOLYN
BLOUGH,
　　　　　*Plaintiffs-Appellants,*

　　　　　v.

HOLLAND REALTY, INC.,
　　　　　*Defendant-Appellee.*

No. 08-35536
D.C. No.
1:06-cv-00059-BLW

GARY YASUDA; SHAWNA YASUDA,
　　　　　*Plaintiffs-Appellants,*

　　　　　v.

SEL-EQUITY COMPANY, DBA Sel-
Equity Realty, DBA Sel-Equity
Real Estate,
　　　　　*Defendant-Appellee.*

No. 08-35542
D.C. Nos.
1:06-cv-00060-BLW
1:04-cv-00121-BLW

DAVE MERRITHEW; EMILY
MERRITHEW; MICHAEL B. HOWELL;
PEGGY JO HOWELL,
　　　　　*Plaintiffs-Appellants,*

　　　　　v.

PARK POINTE REALTY, INC., DBA
John L. Scott Real Estate,
　　　　　*Defendant-Appellee.*

No. 08-35548
D.C. Nos.
1:06-CV-00061-
BLW
1:06-CV-00216-
BLW

ROBERT BAFUS; RENAE BAFUS;
GENE DUDLEY; LOLA R. DUDLEY,
          *Plaintiffs-Appellants,*

               v.

ASPEN REALTY, INC., DBA
Coldwell Banker Aspen Realty,
          *Defendant-Appellee.*

No. 08-35549
D.C. Nos.
1:06-CV-00189-
BLW
1:04-CV-00121-
BLW

OPINION

Appeals from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
July 9, 2009—Portland, Oregon

Filed July 27, 2009

Before: Harry Pregerson, Pamela Ann Rymer and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Rymer

## COUNSEL

Steve W. Berman and Craig R. Spiegel, Hagens Berman Sobol Shapiro LLP, Seattle, Washington, Philip H. Gordon and Bruce S. Bistline, Gordon Law Office, Boise, Idaho, Bruce C. Jones, Jones & Swartz PLLC, Boise, Idaho, and

Daniel Loras Glynn, Trout Jones Gledhill Fuhrman PA, Boise, Idaho for the plaintiffs-appellants.

Eugene A. Ritti, Brad P. Miller, and Jason D. Scott, Hawley Troxell Ennis & Hawley LLP, Boise, Idaho, for defendant-appellee Holland Realty, Inc.

Michael K. Kelley and Scott S. Shay, Haglund, Kelley, Horngren, Jones & Wilder LLP, Portland, Oregon, for defendant-appellee Sel-Equity Company.

Richard C. Boardman and Christine M. Salmi, Perkins Coie LLP, Boise, Idaho, for defendant-appellee Park Pointe Realty, Inc.

James E. Hartley and Elizabeth A. Phelan, Holland & Hart LLP, Denver, Colorado, and B. Newal Squyres and A. Dean Bennett, Holland & Hart, Boise, Idaho for defendant-appellee Aspen Realty, Inc.

---

## OPINION

RYMER, Circuit Judge:

Buyers of newly-constructed houses in the Boise, Idaho area claim that various realtors representing developers tied the sale of undeveloped lots to services and commissions for developed property in violation of the federal and state antitrust laws. Applying the doctrine of "zero foreclosure," the district court granted summary judgment to the realtors because there is no market for listing and referral services among potential buyers of newly-constructed houses, thus no competition in the tied market to be harmed. We agree, and affirm.

I

Curtis Blough and his wife were in the market for a newly-constructed house. They liked an existing home built by

Trademark Homes in Baldwin Park, a subdivision developed by Capital Development, but desired some modifications. Trademark had optioned other lots in this subdivision and agreed to build a house to the Bloughs' specifications. Capital Development had a deal with Holland Realty, Inc. to be the exclusive broker for the sale of lots in Baldwin Park. Holland received a flat fee from the developer for sale of lots, and Trademark agreed to pay Holland a three percent referral fee upon the sale of new homes. The Bloughs entered an agreement with Trademark to purchase the newly-constructed home on a lot within Baldwin Park; Holland's referral fee came out of funds Trademark received from the Bloughs.

Gary and Shawna Yasuda were interested in a home in a subdivision called Sedona Creek. Sedona Creek was being developed by Great Sky Development, Sel-Equity Company was the marketing agent, and Zach Evans Construction was the builder. The Yasudas entered into an agreement with Zach Evans to build a home on a lot that Zach Evans obtained from Great Sky for a price that included a three percent marketing fee for Sel-Equity. The marketing fee for Sel-Equity was based upon the price for the lot and newly-constructed home in the contract between Zach Evans and the Yasudas.

Dave and Emily Merrithew were impressed with a home design by Aspen Homes, with whom they contracted to build a house in the Bear Creek subdivision. The price included the lot and house, as well as a six percent fee based on the contract price that Aspen had agreed to pay its exclusive listing agent, Park Pointe Realty. Park Pointe split the fee with the Merrithews' agent, Century 21 First Place.

Robert and Renae Bafus thought they would buy an empty lot in the Chaumont subdivision and get a construction loan to pay Walker Building for the home, but Walker's contract included the price of the lot and the house. The developer had retained Aspen Realty as a marketing agent, and Aspen Realty also served as Walker Building's agent. The cost Walker

charged for the lot and finished home included a six percent commission that was paid at the closing.

The Bloughs, Yasudas, Merrithews, and Bafuses (to whom we refer collectively as "Buyers") brought this suit as a class action against the agents representing the subdivision developers whose commissions were involved in their purchases (to whom we refer collectively as "Realtors"). Buyers seek damages and declaratory relief for a *per se* unlawful tying arrangement in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.[1] They claim that Realtors tied "services, *i.e.,* commissions with regard to sale of developed lots" (the tied product) to the "sales of undeveloped lots" (the tying product).

The district court certified a class for adjudication of the tying claim. It identified the tying product as sales of undeveloped lots and the tied product as Realtors' services, i.e., commissions, with regard to sale of developed lots. The class consists of those who: (1) bought undeveloped lots in subdivisions where Realtors had the exclusive right to market lots on behalf of the developer; (2) were required to build a house on the lot in order to buy the lot; and (3) were required to pay Realtors a commission based on the cost of the lot plus the actual or estimated cost of the house in order to buy the lot.

Realtors moved for summary judgment. Buyers filed an application under Federal Rule of Civil Procedure 56(f) seeking further discovery into other members of the class to determine whether any of them wanted to buy the services of a

---

[1] Buyers only pursue a *per se* prohibition in federal antitrust law; they do not alternatively argue that the Realtors' practice could be found unlawful under a rule of reason analysis. *See, e.g., United States v. Microsoft Corp.*, 253 F.3d 34, 93-97 (D.C. Cir. 2001). Although the complaint asserts a claim under the Idaho analogue of the Sherman Act, Idaho Code § 48-101, no discrete arguments are made with respect to liability under that statute. The complaint also states a claim under the Idaho Consumer Protection Act, Idaho Code § 48-601, that has been stayed pending this appeal.

listing agent from someone other than Realtors. The district court denied Buyers' request on the ground that they had shown no plausible reason to believe that other members of the class (unlike themselves) would want to purchase the tied product from anyone else. It then ruled on the merits in Realtors' favor, concluding that Buyers failed to show that the alleged tying practice "affects a not insubstantial volume of commerce in the tied product market." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (internal quotation marks omitted).

Buyers timely appealed.

## II

We treat all four cases together, as the district court did, because they present the same legal issue and are factually indistinguishable. In sum, Buyers entered into agreements with homebuilders to purchase developed lots (an undeveloped lot with a newly-constructed home) in different subdivisions in the Boise, Idaho area. Realtors represented the developers of the subdivisions in allocating lots to the homebuilders. The price of the developed lot that Buyers paid to the homebuilders included a commission (or referral fee) for Realtors, typically calculated as a percentage of the total price of the developed lot. It is apparently the custom in Idaho for the seller, rather than the buyer, to pay the commission owed to the listing agent and to the selling agent (the agent assisting the buyer's search for a property) when a transaction closes. Buyers claim the Realtors engaged in a *per se* unlawful tying arrangement when they tied the sale of undeveloped lots (the tying product) to their services and commissions on the sale of developed lots (the tied product).

[1] Under § 1 of the Sherman Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

In certain circumstances, § 1 can be violated by tying two products or services together, whereby "the seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product)." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008). "Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product." *Id*. A tying arrangement "suffer[s] *per se* condemnation" if a plaintiff proves:

> (1) that the defendant tied together the sale of two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a "not insubstantial volume of commerce" in the tied product market.

*Id*. at 913.

**[2]** The third prong of the test is at issue in this case. The injury caused by an unlawful tying arrangement is "reduced competition in the market for the tied product." *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984)); *see also Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34-35 (2006). Thus, the inquiry is "whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis*, is foreclosed to competitors by the tie." *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 501 (1969); *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1424-25 (9th Cir. 1995).

**[3]** We considered the third prong in *Datagate*. There the question was whether the test could be met even though only a single purchaser of the tied product was affected. We held that it could be, so long as the dollar-volume of competition

foreclosed on account of the tying arrangement was not insubstantial. 60 F.3d at 1424-26. Here, there is no evidence that *any* purchaser was affected or that *any* competition was foreclosed. In these circumstances there is zero foreclosure and the third prong is not satisfied.

**[4]** Zero foreclosure exists where the tied product is completely unwanted by the buyer. *See Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 317-18 (7th Cir. 2006); *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 814-15 (1st Cir. 1988); IX Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶¶ 1723-24 (2004 & Supp. 2009). In such a case, there is no unlawful tying arrangement because there is no adverse effect on competition in the tied product market. "[W]hen a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed." *Jefferson Parish*, 466 U.S. at 16.² Areeda & Hovenkamp describe the principle this way:

> In order to obtain desired product A, let us suppose, the defendant's customer is forced to take product B, which it does not want, cannot use, and would not

---

²It is possible to read an earlier statement in *Jefferson Parish* in isolation to suggest a tying claim exists even if the purchaser did not want to buy a tied product. In this passage the Court said that "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." 466 U.S. at 12. However, it is clear from reading all of *Jefferson Parish* that *per se* condemnation does not apply where the plaintiff would not have otherwise purchased the tied product, even from another seller. *Jefferson Parish*, 466 U.S. at 16; *see also Wells Real Estate*, 850 F.2d at 814-15 (reading the statement in *Jefferson Parish*, 466 U.S. at 12, as pertaining to injury and standing to sue, not to the "not insubstantial" volume of commerce that is foreclosed by the tie).

have purchased from anyone. This is typically the equivalent of a higher price for product A. From the viewpoint of the defendant seller, its revenue on product A consists of the A price plus the excess of the B price over B's cost to the seller. From the viewpoint of the customer, the cost of obtaining the desired product A is the nominal A price plus the excess of the B price over its salvage value. This has nothing to do with gaining power in the B market or upsetting competition there.

IX Areeda & Hovenkamp, ¶ 1724b, at 270.

**[5]** The Seventh Circuit recently applied the "zero foreclosure" theory in a similar situation. In *Reifert*, the defendant required purchasers of its real estate listing service also to pay for membership in a realtors association. Subscription to the listing service was deemed necessary to operate as a real estate agent. The plaintiff wanted to gain access to the listing service without paying for membership in the association, and claimed to be the victim of an unlawful tying arrangement. The court concluded that there was no competition in the allegedly tied market for association memberships, and "[w]here there is no competition in the tied market, there can be no antitrust violation. Forcing a buyer to purchase a product he otherwise would not have purchased is insufficient to establish the foreclosure of competition." 450 F.3d at 318 (citing *Jefferson Parish*, 486 U.S. at 16). We agree that this is so.

**[6]** Buyers had no desire to purchase the tied product. Nevertheless, they argue that, even accepting the "zero foreclosure" theory, a plaintiff need not prove that he personally would have bought the tied product so long as *someone* would have bought it.[3] Whether true or not, the difficulty for Buyers

---

[3]For this they rely on a discussion in *Barber & Ross Co. v. Lifetime Doors, Inc.*, 810 F.2d 1276 (4th Cir. 1987), that has to do with antitrust standing. Standing is not at issue here, and *Barber & Ross* does not address the problem of "zero foreclosure" because the plaintiff in that case wanted to purchase the tied product from other sellers.

in this case, who are typical of buyers in the Boise market for newly-constructed houses, is that they have not offered any plausible possibility that others who are similarly situated would have bought the tied product, either. Nor have they explained what services they, or other buyers, would have wanted to obtain in connection with building and selling a house were the market for those services competitive.[4]

While Buyers may well believe the bottom line was too high (something on which we express no opinion), the reality is that they purchased a lot and finished home from the homebuilder for a total price set by the homebuilder. The homebuilder's price no doubt reflected its costs — nuts, bolts, labor, as well as fees, commissions and the like — together with profit. Thus, what Buyers call the tied product boils down to an additional cost to build on a lot in the subdivision of the Buyers' choice. It is undisputed that none of the Buyers wanted (or needed) the tied product on matters relating to building the house. This is understandable, for purchasers of developed lots are not typically in the market to purchase referral and listing services.

[7] Without a market for the tied product, there can be no *per se* unlawful tying arrangement because there is "zero foreclosure" of competition. Given zero foreclosure, it follows that Buyers failed to show harm to a "not insubstantial volume of commerce" in the tied product market. As this is required to prevail on a *per se* tying claim, summary judgment was properly granted.

---

[4]Buyers frame their theory of the tied product market exclusively from the perspective of similarly-situated purchasers of developed lots. The record reveals no attempt to define the market from the view of homebuilders or realtors that potentially would have competed to supply the tied product.

III

Buyers contend that the district court should not have granted summary judgment before allowing more discovery. The summary judgment proceedings were initiated more than two years after the action was filed and much discovery had been conducted. However, Buyers were dissatisfied with Realtors' responses, which they believed did not completely disclose members of the class in all subdivisions, and filed a Rule 56(f) application asking for more time and discovery so that they could find out whether other class members would have wanted to buy the tied product.[5] After this, but before the court had ruled on the motion for summary judgment or their application, Buyers filed a motion to compel discovery to the same end. The court denied the Rule 56(f) application on the ground that Buyers had not met their burden of identifying relevant information that would show more than zero foreclosure, and denied the motion to compel as moot after giving Buyers an opportunity to brief why it was not.

**[8]** Buyers rely on *Garrett v. City and County of San Fran-*

---

[5]Rule 56(f) states:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

"To prevail under this Rule, parties opposing a motion for summary judgment must make '(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.' " *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-30 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

*cisco*, 818 F.2d 1515 (9th Cir. 1987), where we faulted the district court for ruling on a motion for summary judgment without having first resolved a pending motion to compel, but this is not a *Garrett* case. Here the district court addressed the Rule 56(f) application, and found it wanting. We see no abuse of discretion for reasons we have explained: no plausible basis to believe that the information sought exists, that is, that there could be members of the class who might have wanted to buy the tied product even though Buyers did not. When the district court later denied the motion to compel as moot, it did so after having ruled adversely on the merits of the Rule 56(f) application that sought the same discovery. Thus, *Garrett* is not implicated. Likewise, the district court's decision is not inconsistent with *Clark v. Capital Credit & Collection Services., Inc.*, 460 F.3d 1162 (9th Cir. 2006), or *California Department of Social Services v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008), as Buyers maintain. In both, *as in Garrett*, the district court dismissed a pending motion for discovery without considering its merits, whereas here, the district court considered the merits and concluded there was no point to pursuing information whose existence was implausible.

IV

Assuming (without deciding) that Buyers meet the first two prongs of the test for a *per se* unlawful tying arrangement, the tying arrangement fails to affect a not insubstantial volume of commerce in the tied product (services and commissions on the sale of developed lots) because there is no market for those services among buyers of newly-constructed houses. When there is no demand, there is zero foreclosure. Accordingly, the district court correctly held that Buyers, having shown no foreclosure of competition in the market for the tied product, failed to show the critical third element of a claim for a *per se* unlawful tying arrangement.

AFFIRMED.