RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0294p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FIFTH THIRD MORTGAGE COMPANY,
     *Plaintiff-Appellee,*

  *v.*

     No. 11-3795

CHICAGO TITLE INSURANCE COMPANY,
     *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:10-cv-183—Timothy S. Black, District Judge.

Argued: July 17, 2012

Decided and Filed: August 30, 2012

Before: SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Robert J. Fogarty, HAHN, LOESER & PARKS LLP, Cleveland, Ohio, for Appellant. John C. Greiner, GRAYDON, HEAD & RITCHEY LLP, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Robert J. Fogarty, Derek E. Diaz, Justin M. Croniser, HAHN, LOESER & PARKS LLP, Cleveland, Ohio, for Appellant. John C. Greiner, Kara A. Czanik, GRAYDON, HEAD & RITCHEY LLP, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

  KETHLEDGE, Circuit Judge. When a party comes to us with nine grounds for reversing the district court, that usually means there are none. Here, Chicago Title Insurance Company challenges on nine grounds the district court's grant of summary

_____

[*] The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

judgment to Fifth Third Mortgage on claims that Chicago Title was required to defend and indemnify Fifth Third in a dispute over property in Ohio. We reject Chicago Title's arguments and affirm.

I.

In 2007, Fifth Third loaned Anthony Buford $406,000 in exchange for a mortgage on property that Buford purportedly owned. The property was located at 7694 Plantation Drive in Mason, Ohio. To insure against the risks that Buford did not actually have title to the property or that other creditors had interests in the property that would trump the mortgage, Fifth Third obtained a title-insurance policy from Direct Title Resources. Direct Title was an issuing agent for Chicago Title.

Direct Title was also a fraudulent agent. Jolie Neal, Direct Title's sole "member," was the actual title owner of the Plantation property. She used that single property as collateral to obtain multiple loans from different lenders. She also conspired with Anthony Buford, who obtained more loans by pretending to be the owner of the Plantation property—which he too used as collateral.

In December 2008, one of Jolie Neal's creditors foreclosed on the Plantation property in state court. Fifth Third learned of the foreclosure suit and intervened to protect its mortgage interest in the property. In the process, Fifth Third discovered that Buford was not, in fact, the record title owner of the property. Fifth Third also learned that other creditors held liens on the property and that their liens were superior to Fifth Third's mortgage.

Fifth Third's title policy covered any "loss or damage . . . incurred by" Fifth Third "by reason of" a title defect and "[t]he lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance." Citing the policy, Fifth Third asked Chicago Title to defend Fifth Third's interest in the Plantation property in the foreclosure action. Fifth Third also asked Chicago Title to compensate Fifth Third for losses resulting from the title defect and the inferiority of its mortgage. Chicago Title

refused to defend or indemnify Fifth Third.  Fifth Third then filed this lawsuit against Chicago Title.

Three months later, before discovery had begun, Fifth Third moved for summary judgment.  Chicago Title filed an affidavit under Rule 56(d), stating that it needed more time to conduct discovery before responding to the motion for summary judgment.  Among other things, Chicago Title said that it needed discovery on the question whether "Fifth Third failed to follow objectively reasonable and prudent underwriting standards" in processing Buford's loan application.  Chicago Title also said that it needed discovery to determine whether Direct Title had authority to issue the title-insurance policy on Chicago Title's behalf.  The district court held that discovery would be pointless, however, because Chicago Title's defenses to the suit were clearly meritless.

This appeal followed.

II.

We review the district court's denial of Chicago Title's Rule 56(d) motion for an abuse of discretion.  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 419–20 (6th Cir. 2008).  Whether the district court should have granted Chicago Title's motion depends on whether "'further discovery would [] have changed the legal and factual deficiencies'" in Chicago Title's case.  *Id.* at 420 (citation omitted).

Chicago Title asserts that it might have prevailed on a number of defenses if given time to take discovery on them.  First, Chicago Title argues that the policy is unenforceable because its issuing agent, Direct Title, lacked both actual and apparent authority to issue the policy on Chicago Title's behalf.  *See generally Meyer v. Klensch*, 175 N.E.2d 870, 871 (Ohio Ct. App. 1961).  There is no dispute that Direct Title lacked actual authority to issue the policy, because a Direct Title "member" had an interest in the Plantation property and because Direct Title issued the policy as part of a fraudulent conspiracy.  Chicago Title says that Direct Title also lacked apparent authority because Chicago Title did not "h[old] [] out" Direct Title "to possess" the authority to issue the

policy.  *Randall v. Alan L. Rankin Ins., Inc.*, 526 N.E.2d 97, 100 (Ohio Ct. App. 1987).  So Chicago Title says that it was entitled to discovery on that issue.

Chicago Title's apparent-authority theory is meritless.  An agent has apparent authority to bind a principal if the principal has "'by [its] voluntary act placed [the] agent in such a situation that a person of ordinary prudence . . . is justified in assuming that such agent is authorized to perform on behalf of his principal'" the act in question.  *Master Consol. Corp. v. BancOhio Nat'l Bank*, 575 N.E.2d 817, 822 (Ohio 1991) (citation omitted).  Chicago Title surely did that here:  It entered an issuing-agent agreement with Direct Title that authorized Direct Title to issue title-insurance policies on Chicago Title's behalf.  That was sufficient to make Fifth Third's belief in Direct Title's authority reasonable and thus to bind Chicago Title by the policy Direct Title issued.  *Cf. Milnes v. Anson B. Smith & Co.*, No. 5310, 1980 WL 354165, at *2 (Ohio Ct. App. July 31, 1980).

Chicago Title responds that it might discover evidence that Fifth Third knew about Direct Title's fraudulent scheme.  But that theory is so improbable—why, after all, would Fifth Third lend money if it knew it would never get the money back—that Chicago Title specifically alleged in its pleadings below that Fifth Third was *unaware* of the scheme.  The district court did not need to permit discovery regarding such a baseless argument.  *See generally Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 (9th Cir. 2009) (no obligation to grant discovery for information where there is "no plausible basis to believe that the information sought exists"); *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1364 (Fed. Cir. 2008).

Chicago Title next argues that Fifth Third's losses were Fifth Third's own fault.  Specifically, the policy only provides coverage for losses that arise "by reason of" a title defect or encumbrance.  Chicago Title reads this requirement to mean that the defect or encumbrance must be the sole proximate cause of the loss.  And had Fifth Third reviewed Buford's loan application more thoroughly, Chicago Title says, Fifth Third would have rejected it and avoided the loss that resulted when another creditor foreclosed on the property and asserted a superior interest.  Thus, Chicago Title says that

Fifth Third's allegedly shoddy underwriting of Buford's loan was the proximate cause of Fifth Third's loss.

The problem with this argument is that the insurance policy says nothing about Fifth Third's underwriting obligations. Chicago Title insured against a risk that Buford's title in the Plantation property would be defective. That risk materialized, and Fifth Third's inability to foreclose on the property caused Fifth Third a loss. By the policy's plain terms, that means that Chicago Title was required to pay benefits to Fifth Third. Nothing in the policy makes that obligation conditional upon the quality of Fifth Third's underwriting with respect to the Buford loan. Chicago Title insured against a risk of title defects, not a risk of default. Its argument has no support whatever under the policy's terms.

Chicago Title reads the policy differently. The policy excludes from coverage:

> [L]oss or damage, costs, attorneys' fees, or expenses that arise by reason of . . . [d]efects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed, or agreed to by the Insured Claimant; [or] (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the company by the Insured Claimant prior to the date the Insured Claimant became an insured under this policy[.]

Chicago Title says that Fifth Third's alleged underwriting failure is an "other matter" that Fifth Third "created," and that Fifth Third therefore cannot recover for the resulting loss. But Chicago Title reads "other matters" too broadly. "[O]ther matters" is a "general" phrase that follows "specific terms"—"defects, liens, encumbrances, [and] adverse claims[.]" *Albrecht v. Marinas Int'l Consol., L.P.*, No. 25246, 2010 WL 4866289, at *3 (Ohio Ct. App. Nov. 24, 2010) (citation omitted). Under the interpretive canon of *ejusdem generis*—and as written English is commonly understood as well—the exclusion therefore forecloses coverage if Fifth Third created a title defect, encumbrance, adverse claim, or *something similar*. *See generally id.* Fifth Third's alleged underwriting failure is not similar to a title defect or encumbrance.

Fourth, Chicago Title argues that discovery concerning Fifth Third's underwriting standards might show that Fifth Third violated the covenant of good faith and fair dealing. Where an insurance policy "is silent . . . with respect to a particular matter," Chicago Title notes, "the parties . . . are required to use good faith to fill the gap of a silent contract." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 764 (6th Cir. 2008) (internal quotation marks and citations omitted). Chicago Title says that the policy here is silent about Fifth Third's duty to follow prudent underwriting practices and that the duty of good faith and fair dealing therefore obligated Fifth Third to follow them.

But there is no gap to fill here. A gap ordinarily exists where a question arises as to how to "fulfill the explicit terms of an agreement[.]" *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1519 n.25 (S.D.N.Y. 1989) (noting that the "implied covenant [applies] where it proves necessary to fulfill the explicit terms of an agreement"). In *Savedoff*, for example, the student-loan contract at issue permitted the lender to collect interest accrued as a result of interest-rate changes. 524 F.3d at 764-65. In order to exercise that authority, however, the lender needed to determine "when and how" it could collect the interest. The contract was silent on those points, so the court held that the duty of good faith and fair dealing would supply the rules for collecting the interest. *Id.* at 769. But here there is no question how to fulfill any of the policy's explicit terms. There were liens on the property superior to Fifth Third's, and Buford's title was defective, so Chicago Title must cover the loss that results. Thus, Chicago Title's argument—that we should read into the contract a condition that Fifth Third adopt sound underwriting standards—amounts to nothing more than an attempt to "'add [] to the contract a substantive provision not included by the parties.'" *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (citation omitted); *see also Metro. Life*, 716 F. Supp. at 1519 (the covenant does not permit a party to "shoehorn into an [agreement] additional terms [the party] now wish[es] had been included"). We will not do that.

Fifth, Chicago Title contends that discovery might support its defense under the "known loss doctrine." That doctrine holds that "one cannot buy insurance coverage for

a loss already known to be in progress, or for a loss that the insured planned, intended, or is aware is substantially certain to occur." *Buckeye Ranch, Inc. v. Northfield Ins. Co.*, 839 N.E.2d 94, 104 (Ohio. Ct. Com. Pl. 2005). Chicago Title asserts that discovery might show that Fifth Third knew that Buford was likely to default on the loan here.

Whether Ohio recognizes the known-loss doctrine is unclear. *See id.* at 104–05; *Burlington Ins. Co. v. PMI Am. Inc.*, No. 2:08-cv-1054, 2012 WL 995294, at *10 (S.D. Ohio Mar. 23, 2012). In any event, proof that Fifth Third did a poor job of underwriting Buford's loan would not be sufficient to prevail on a known-loss defense. Fifth Third could only know that it was "substantially likely" to lose money on its loan to Buford if it also knew of the title defect or encumbrances on the property that served as collateral for the loan. Chicago Title does not contend that discovery would reveal such knowledge on Fifth Third's part, aside from idle speculation that is not discovery-worthy. *See generally Blough*, 574 F.3d at 1091. Thus, discovery cannot help Chicago Title prevail on a known-loss defense.

Sixth, Chicago Title argues that it is entitled to rescind the insurance policy. In Ohio, a party to a contract is entitled to rescission if the party relies on the other party's intentional misrepresentation of a material fact. *See Spriggs v. Martin*, 182 N.E.2d 20, 24 (Ohio Ct. App. 1961). Chicago Title argues that Fifth Third's failure to disclose its underwriting practices would amount to a misrepresentation of a material fact on which Chicago Title relied.

Under Ohio law, however, an insurer cannot rescind a policy after becoming liable on it, unless the putative misrepresentation is written into the policy itself. *Allstate Ins. Co. v. Boggs*, 271 N.E.2d 855, 858 (Ohio 1971); *James v. Safeco Ins. Co. of Ill.*, 959 N.E.2d 599, 602 (Ohio Ct. App. 2011). Chicago Title does not dispute that the alleged misrepresentation is absent from the text of the policy here. Nor does Chicago Title dispute that it has already incurred a liability under the terms of the policy. Thus Chicago Title cannot rescind the policy at this late stage.

Chicago Title responds that this rule should not apply where the policy "insure[s] against future losses springing from past events." But Chicago Title has not identified

any Ohio cases that draw the distinction it proposes. We see no basis for reading that distinction into Ohio law.

Seventh, Chicago Title relies on the rule that an insurer is "relieved of the obligation to provide coverage if it is prejudiced by the [insured's] failure to protect [the insurer's] subrogation rights." *Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 946 (Ohio 2002). Somehow, Chicago Title suggests, Fifth Third's shoddy underwriting triggered the application of this rule as well. Under Ohio law, however, this rule applies only when the insured neglects to "notify the insurer of a potential claim" against a third party "prior to settlement with and full release of the [third party] who caused the injury" covered by the policy. *Id.* at 930. Fifth Third did no such thing here. Moreover, Chicago Title has waived this defense because it mentioned subrogation only once, in a cursory footnote, in its brief before the district court.

Eighth, Chicago Title challenges the district court's holding that Chicago Title had a duty to defend Fifth Third in the state foreclosure action. Under the policy, Chicago Title had a duty to "provide for the defense of [Fifth Third] in litigation in which any third party asserts a claim covered by this policy adverse to the insured." Chicago Title reads this provision to mean that it has an obligation to represent Fifth Third only where Fifth Third is a defendant in a lawsuit over its mortgage. Thus Chicago Title argues that it had no obligation to represent Fifth Third in the foreclosure action, since Fifth Third was not a defendant there but instead intervened voluntarily.

But Chicago Title accepted a broader duty under the text of the policy here. The policy does not say that Chicago Title will defend Fifth Third if a third party "asserts a claim against Fifth Third." Rather, it says that Chicago Title will defend Fifth Third if a third party "asserts *a claim* covered by this policy *adverse to the insured*." The claim in the foreclosure action was such a claim. The district court was correct to hold that Chicago Title breached its duty to defend.

Finally, Chicago Title challenges the district court's holding that it acted in bad faith when it refused coverage for Fifth Third's loss. An insurer acts in bad faith if its action is "'not predicated upon circumstances that furnish reasonable justification

therefor.'" *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994) (citation omitted). Chicago Title contends that a jury could conclude that its repudiation of its agreement with Fifth Third was reasonable. *See generally Netzley v. Nationwide Mut. Ins. Co.*, 296 N.E.2d 550, 559 (Ohio Ct. App. 1971).

We disagree. Chicago Title denied coverage here based upon a condition—adequate underwriting practices—nowhere found or even intimated in the policy itself. And the policy terms otherwise plainly required Chicago Title to cover Fifth Third's loss. Thus, under the policy's terms, Chicago Title's refusal to provide coverage, on underwriting grounds, was plainly unreasonable. The district court was correct to grant summary judgment to Fifth Third.

In closing, the party that should have been more careful here was Chicago Title itself. Chicago Title, not Fifth Third, chose to enter into an agency agreement with a fraudulent agent. That agreement was the *sine qua non* of everyone's losses here. And Chicago Title, not Fifth Third, failed to catch the publicly recorded encumbrances on the Plantation property before issuing the policy here. The consequences that followed are simply those spelled out in the policy itself.

The district court's judgment is affirmed.