NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0062n.06

No. 24-1245

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 03, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARIO KEEREAM JACKSON,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; KETHLEDGE and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. A jury convicted Mario Jackson of four armed robberies in the Detroit area. Jackson now appeals the district court's denial of his pretrial motions to suppress, his motion to exclude the government's trial expert, and his post-trial motion for a competency hearing. We affirm.

I.

In December 2018, the FBI began to investigate a string of armed robberies of Walgreens stores around Detroit. Agents soon determined they were after a single suspect: for each robbery, footage from security cameras showed a suspect opening a cooler door, climbing through it to the room behind, lying in wait there, and eventually forcing an employee to open a safe at gunpoint. In one of the robberies, the suspect stole substantial amounts of prescription drugs (mostly opioids). A video from one robbery showed that the suspect had a cellphone, so the agents obtained a search warrant for cell-tower records that might show whether any phones had been

present near more than one of the robberies. Those records showed that one phone—assigned to (313) 742-1482—had been near two of the stores when they were robbed. Several law enforcement databases linked that number to Mario Jackson.

In April 2019, agents obtained a second search warrant—this time for the historical-location and call records of Jackson's phone specifically. These records showed that Jackson's phone had been near three of the four robberies when they occurred. This data also helped the agents identify Jackson's likely home address, where they later watched him use a key to enter the home.

Agents then obtained and executed a search warrant for the home, where they seized Jackson's cellphone and found clothing that matched what the suspect had been wearing in several of the security videos. The agents also found a loaded handgun in the attic. Jackson was home when the agents executed the warrant, so they arrested him.

A federal grand jury later indicted Jackson on robbery, drug, and firearms charges. Jackson challenged the warrants to obtain cellphone records and the warrant to search his home. He also moved to exclude expert testimony regarding the cell-tower data that placed his phone near several of the robberies. The court denied all those motions. While the case was pending, the government learned that a prison inmate had placed several calls to Jackson's phone. During one call, Jackson told the inmate that he was at the Rolex store in Somerset Mall in Troy. Video footage from the mall showed Jackson inside a jewelry store, using the phone—which was further proof that the phone (whose records agents had obtained) was his. Jackson moved to exclude those recordings and videos, but the court denied his motion. Eventually—after a six-day trial at which Jackson testified—the jury convicted him on all counts.

Before sentencing, Jackson moved for a competency hearing. The district court denied the motion based on its interactions with Jackson during pretrial hearings and at trial. The court later sentenced Jackson to 336 months in prison. This appeal followed.

II.

"When a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012). Such is the case with the litany of arguments here.

A.

Jackson makes six arguments regarding the district court's denial of his motions to suppress. We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016).

Jackson argues that the warrant for cell-tower records was invalid because, he says, the affiant omitted facts regarding the data's precision as to the phone's location. A warrant is invalid if the affiant intentionally or recklessly omitted information that would have "undermined the showing of probable cause." *United States v. Carpenter*, 360 F.3d 591, 597 (6th Cir. 2004) (en banc) (emphasis omitted). Jackson had made no attempt to show such intent or recklessness here, so we reject this argument. *See, e.g.*, *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008).

Jackson also makes two arguments that are derivative of arguments we reject here. To wit, he argues that the warrant to search his phone records was a poisonous fruit of the warrant to search the cell-tower records. But (per the above) we rejected his argument as to the search of those records, so we reject his argument as to the phone records too. And that in turn defeats his next argument, which is that the search of his home was unlawful because it was based on the search of the phone records. We reject this argument.

That leaves two other arguments regarding the validity of the warrant to search Jackson's home. First, as to that warrant, the affiant explained that agents had found a glove at the scene of one of the robberies and that "a female was the main contributor of the DNA along with two other unknown male contributors." Jackson says that statement inaccurately implied that Jackson was one of the "unknown male contributors." But he has not shown that the statement itself is false, much less intentionally or recklessly so. We therefore reject this argument. *See United States v. Ardd*, 911 F.3d 348, 353-54 (6th Cir. 2018). Likewise meritless is his argument that the affiant "neglected to inform the magistrate" that Jackson had gotten a new phone—and thus, he says, was no longer in possession of the "target cell phone" described in the affidavit. The affiant defined "target cell phone" as "the cellular device associated with" Jackson's phone number. Thus, when Jackson connected a new phone to his existing phone number, that new phone became the "target cell phone."

Jackson also challenges the denial of his motion to suppress the recordings of his calls with the prison inmate, and the videos that agents found as a result of them. Suffice it to say that Jackson had no expectation of privacy in those phone calls—not least because they began with a recording that told him the calls were "subject to recording and monitoring." *See, e.g.*, *United States v. Hadley*, 431 F.3d 484, 489 (6th Cir. 2005).

B.

Jackson next challenges the admission of certain expert testimony elicited by the government at trial. That testimony concerned the cell-tower data that the agents used to put Jackson's phone in proximity to some of the robberies. Jackson did not object to the expert's testimony at trial, so we review its admission for plain error. *See United States v. Poulsen*, 655 F.3d 492, 510-11 (6th Cir. 2011). There was none here: Jackson argues that cell-tower data is

categorically unreliable as a means to identify a cellphone's location. Suffice it to say that he has not remotely established that proposition here.

C.

Finally, Jackson challenges the denial of his post-trial motion for a competency hearing. "[T]he conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966). A district court must hold a competency hearing if it finds "reasonable cause to believe" that the defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Where, as here, the district court expressly finds the defendant to be competent, we review for clear error. *Mackey v. Dutton*, 217 F.3d 399, 407, 412-13 (6th Cir. 2000).

Jackson argues that the district court had reasonable cause to doubt his competency because Jackson chose to wear his jail uniform and shackles while testifying. But the district court found Jackson to be competent based on its interactions with him before and during the trial. The court thus viewed Jackson's choice as a calculated gamble, rather than evidence that he was incompetent to stand trial. Suffice it to say that the record supports that determination.

\*       \*       \*

The district court's judgment is affirmed.