COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Humphreys and Kelsey
Argued at Richmond, Virginia


JAMIL MOHAMMAD RAJA
                                              OPINION BY
v.    Record No. 1036-02-2          JUDGE ROBERT J. HUMPHREYS
                                             JUNE 3, 2003
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Beverly W. Snukals, Judge

              C. David Whaley (Morchower, Luxton & Whaley,
              on brief), for appellant.

              Stephen R. McCullough, Assistant Attorney
              General (Jerry W. Kilgore, Attorney General,
              on brief), for appellee.


     Jamil Mohammad Raja appeals his conviction, after a jury

trial, for stalking, in violation of Code § 18.2-60.3.  Raja

presents four issues on appeal to this Court.  For the reasons

that follow, we affirm.

                          I.  Background

     In accordance with settled rules of appellate review, we

state the evidence presented at trial in the light most favorable

to the Commonwealth, the prevailing party below.  Burns v.

Commonwealth, 261 Va. 307, 313, 541 S.E.2d 872, 877 (2001).

     In the Spring of 1999, Raja approached the parents of

Sabahat Munir, and expressed his interest in "get[ting] to know"

Sabahat and potentially marrying her.  Sabahat and Raja were

Pakastani citizens, living in Northern Virginia.  According to

the Pakistani culture, the parents of an unmarried female arrange

a marriage for their daughter. However, in some cases, the decision to marry is left to the discretion of the unmarried female. Following this custom, Muhammad Munir, Sabahat's father, conveyed Raja's expression of interest to Sabahat. Sabahat, who was having problems with U.S. immigration at the time, agreed to consider Raja as a potential spouse.

Sabahat and Raja began their relationship shortly thereafter. Their courtship continued until approximately March or April of 2000. During that time, the couple obtained a marriage license. However, in the Spring of 2000, Sabahat informed her father that she did not wish to marry Raja.

At that time, Mr. Munir informed Raja that his daughter did not wish to marry him. Mr. Munir also asked Raja not to "bother" his family any further, concerning the issue of marriage. Despite his discussion with Mr. Munir, Raja continued to pursue Sabahat. He called Mr. Munir "many times" at his place of employment. He also called the family's home at night, consistently asking Mr. Munir to reconsider. In addition, Raja approached Mr. Munir in person. On one occasion, Raja told Mr. Munir, "if you will not agree, then it will be harder for your family." He further stated "it will not be good for your family if you refuse this. I want your daughter to be married with [sic] me at any cost." Mr. Munir again refused and asked Raja to stop bothering his family, as his family was "very upset" and "in a miserable condition," due to the situation. On still yet another occasion, Raja spoke with Abida Munir, Sabahat's mother. He told Mrs. Munir,

> if you will not let [Sabahat] talk or let

-

her marry me, then I will destroy your
family and you [sic] have to pay for it and
I will take you to court and your family
and, you know, your reputation in society
will get bad and I will destroy her life.
And even if she gets married I will destroy
her husband's life too. And what I can do –
I can do – I can put something on her face
or something and destroy her face so she
will not be able to get married to anybody
else.

During that period of time, Mrs. Munir told Raja to stop calling "like ten times." Sabahat also told Raja to stop calling and contacting her.

Nevertheless, Raja continued to contact the home. He also continued to pursue Sabahat. Raja left Sabahat several "weird messages saying he was going to harm himself," "commit suicide," or "do something harmful if [she did] not return his calls." Raja also followed Sabahat to work and showed up at her home. On one occasion, in late April of 2000, Sabahat received a call from a gentleman at her work. Because Sabahat's supervisor, Johanna Lizardi, had received several reports of "crank calls" that were being made by a man asking to speak to Sabahat, all such calls were transferred to Lizardi. When Lizardi answered, the man identified himself as "Jamil" and told Lizardi that he wanted to speak with Sabahat. When Lizardi told him that Sabahat was not available, the man told Lizardi he was the "man who was courting" Sabahat and that he was having "issues about trying to get married to her." He then made "disparaging remarks about [Sabahat's] character." Lizardi asked the man to stop calling and threatened to contact the police if he continued to call. At that point, the man told Lizardi, "I can take care of her just as

-

easily as I can take care of you."  The man then apologized and said he did not intend to threaten Lizardi.  Nevertheless, Lizardi contacted Sabahat and the police about the phone call.  After speaking with Lizardi and Sabahat, George Mason University police contacted Raja and told him to have no further contact with Sabahat.

Raja, nevertheless, continued to call Sabahat and pursue her.  On one occasion, after Sabahat told him she had made plans to marry another man, Raja told her "I know you are getting married and I am going to destroy – whatever it takes."  Sabahat spoke with George Mason University police, on more than one occasion, about Raja's conduct and was "terrif[ied]" to learn that the police could not "do much" for her.

Sabahat married Abdul S'Lam in July of 2000 and moved with him to Richmond.  S'Lam is a permanent resident alien.

Sabahat received no phone calls from Raja in June, July or August of that year. However, on August 30, 2000, Sabahat and her husband were driving to dinner when Sabahat saw Raja's car. She became scared, but did not tell her husband about Raja because she feared that it would have an adverse impact upon her marriage.

On the evening of September 1, 2000, Raja went to the Medical College of Virginia (MCV) hospital in Richmond, S'Lam's place of employment, and asked to speak with him. The employee he spoke with told him that S'Lam was not working that evening and that he worked during the day shift.

The following afternoon, September 2, 2000, Sabahat was at MCV, waiting for her husband to finish work. Shortly after she arrived, she saw Raja. In an effort to seek "protection" she ran to her husband and told him that there was someone there who had been following her. S'Lam told his wife to "relax" and went out into the hallway to speak with Raja. He asked Raja who he was, but Raja refused to identify himself. Raja began to make disparaging comments to Sabahat and asked her if S'Lam was her husband. S'Lam became "scared" and asked a co-worker to call police. Raja then began to argue with S'Lam and told him he would "see [him] downstairs." When Raja attempted to leave by getting on the elevator, S'Lam blocked the elevator doors with his foot and the two began to shove each other. Raja stated, in his native language, that he would "make sure that [S'Lam would be] killed or I will kill you." Sabahat then became "scared again" and called again for security. At that time, the police arrived and diffused the situation.

-

Officer David Matteson, of the Virginia Commonwealth University Police Department, spoke with each individual separately. He told Raja that he could be charged with trespassing and escorted him from the building. Raja told him that he was in Richmond for a conference and that Sabahat had invited him to MCV. Raja stated that Sabahat "still want[ed] him," "in a relationship type way," and insisted on speaking with S'Lam. Raja then showed Officer Matteson three e-mails written to him by Sabahat, approximately one-and-one-half to two years earlier, as "proof" that Sabahat "still want[ed] [him]."

Later that same evening, Raja called Sabahat's home in Richmond several times and hung up. Both S'Lam and Sabahat became scared. Shortly thereafter, they received another call. S'Lam answered and "heard [Raja's] voice," "[h]e started right away with [S'Lam's] date of birth," "then he said he [had S'Lam's] social security as well." Sabahat immediately called 911 and waited for the police to arrive.

An arrest warrant was subsequently issued in the City of Richmond for Raja's arrest, charging him with stalking, in violation of Code § 18.2-60.3. The warrant stated, initially, that the conduct for which he was charged, took place "on or about 09/06/2000." On January 19, 2001, Raja was convicted on the charge in general district court and sentenced to serve 12 months in jail, with ten months of the sentence suspended upon certain conditions. Raja appealed his conviction to the circuit court.

Prior to his arraignment and trial in circuit court, which

-

took place on April 30, 2002, Raja filed a Motion for Bill of Particulars contending that "separate occurrences of the proscribed conduct on separate occasions are elements of the offense which must be alleged in either the arrest warrant or an indictment."  Raja thus, sought a bill of particulars containing:

> 1.  The exact time, date and place that the prohibited conduct occurred.
>
> 2.  A description of the prohibited conduct, including acts and statements.
>
> 3.  The name and relationship of the person or persons who were placed in fear by the conduct.

In response, the Commonwealth provided Raja with an affidavit prepared by Sabahat, which had been filed in general district court for the purpose of obtaining a preliminary protective order.  The affidavit generally detailed Raja's conduct, including the phone calls made to Sabahat's home in April of 2000, Raja's discussion with Sabahat's father in "May or June" of 2000 regarding "a reason for the termination of the relationship," and Raja's "threat[]" "to 'ruin the wedding'" and "do 'whatever it took,'" made in "May or June" of 2000.

At the beginning of trial, Raja made three motions before the circuit court.[1]  First, he made a motion in limine seeking to bar the Commonwealth from producing evidence of acts committed by Raja after the date of September 2, 2000, the date of the

---

[1] Raja was also tried on a charge of assault and battery based upon the incident at MCV involving S'Lam.  However, the jury found Raja not guilty on that charge.

incident at MCV.[2]  Second, Raja asked the court to declare the

warrant defective because the warrant was amended, sometime prior

to the trial de novo in circuit court, to read that the offense

date was "on or about 3/1/00 - 11/30/00."  Raja contended that

the warrant was defective because "it was amended past the day

that someone had appeared before the magistrate and swore that

these things were true.  So what you have is you have a

magistrate issuing a warrant for things that haven't occurred

when you expand it."  Finally, Raja asked the court to bar the

Commonwealth from producing any evidence which did not relate to

the specific instances of conduct listed in the Commonwealth's

bill of particulars.

The circuit court overruled each of Raja's motions.  With

regard to the first two motions, the circuit court noted that

there were two sets of initials near the amended portion of the

---

[2] Raja later stated that any "violations of stalking"
occurring after "September 6, 2000," the date the "warrant was
sworn to," should be barred.

-

arrest warrant, one set which appeared to be the initials of Raja's prior defense attorney, who had represented him before the general district court, "Jay Paluso."  Thus, the court held as follows:

> Well, unless you give me something to hang my hat on, I'm not going to find that the warrant is defective, and the Court is going forward based on the allegation that it is March 1st through November 30th.  So the only issue is whether there is any evidence that will be introduced after November 30th, and that we will take care of at a bench conference before any of the evidence is introduced.

As to Raja's final argument, the circuit court held:

> Well, I can't make a ruling on something when I have no idea what may arise at trial. What I would suggest you do is if you see that it's coming and if you can ward it off before it gets to the jury, then we will take a bench conference and we will deal with it at that time.
>
> *     *     *     *     *     *     *
>
> So I will overrule your motion at this time.

During the trial, Raja raised only one objection to evidence elicited by the Commonwealth, on the basis that the evidence was "beyond the Bill of Particulars."  The objection was raised during the testimony of Mr. Munir, when the Commonwealth asked him whether Raja had threatened him.  The circuit court overruled the objection, and Mr. Munir testified that Raja had threatened him in "April to June" of 2000, stating that "it will not be good for your family if you will [sic] refuse this.  I want your daughter to be married with [sic] me at any cost."

After the close of the Commonwealth's case-in-chief, Raja

-

made a motion to strike the evidence, contending that the Commonwealth had failed to prove venue with regard to the stalking charge, because the evidence of the incidents which took place in Richmond was insufficient to establish the elements of stalking. The circuit court overruled the motion.

The jury ultimately convicted Raja of the stalking charge. He was sentenced to 12 months in jail and a fine of $2,500.

## II. Analysis

On appeal, Raja presents four issues for our consideration. He argues that the circuit court erred in 1) failing to rule that the arrest warrant was defective; 2) failing to exclude evidence presented by the Commonwealth which was not contained in the Commonwealth's bill of particulars; 3) failing to sustain his motion pertaining to venue; and, 4) finding the evidence sufficient to support the conviction.

### A.

Raja first contends that the arrest warrant was defective because the warrant was amended, sometime prior to the trial de novo in circuit court, to read that the offense date was "on or about 3/1/00 – 11/30/00." Specifically, Raja argues the amendment was not binding upon him for purposes of the circuit court proceedings because it occurred prior to the trial de novo, because his counsel for the circuit court proceeding did not agree to it, and because "an attorney cannot agree to expand a warrant to include conduct that occurred after the arrest warrant was issued." We disagree.

The Supreme Court of Virginia has long recognized that "in this jurisdiction the same particularity is not required in

-

warrants of arrest as is required in formal indictments."
Bissell v. Commonwealth, 199 Va. 397, 399, 100 S.E.2d 1, 3
(1957).  Nevertheless, warrants must be sufficient to "point out
the offense for which the defendant is to stand trial."  Id.; see
also Williams v. Commonwealth, 5 Va. App. 514, 516, 365 S.E.2d
340, 341 (1988) (noting that in describing the offense charged,
the "description must comply with Rule 3A:6(a), which provides
that an indictment must give an accused notice of the nature and
character of the offense charged against him").  The Supreme
Court of Virginia has also held that "the judge of the trial
court . . . ha[s] the power to amend [an arrest] warrant or, upon
good reason, to dismiss it and issue a new one, under his own
hand, properly charging a violation . . . ."  Robinson v.
Commonwealth, 206 Va. 766, 769, 146 S.E.2d 197, 200 (1966).
Indeed, "the fullest provision is made for all amendments of the
original warrant 'in any respect in which it appears to be
defective.'"  Malouf v. City of Roanoke, 177 Va. 846, 853, 13
S.E.2d 319, 321 (1941) (quoting Collins v. City of Radford, 134
Va. 518, 525, 113 S.E. 735, 737 (1922)); see also Code
§ 16.1-137.

We first note that in the case at bar, there is no question
that the arrest warrant placed Raja on notice of the offense for
which he was to be tried - specifically, stalking, in violation
of Code § 18.2-60.3.  Further, as Raja himself conceded before
the circuit court, there is no question that this particular
charge, by its very nature, involves multiple instances of
conduct, taking place on "expansive dates."  In such cases,

-

where the date of the offense is "not of the essence of the offense," nor "shown to be significant," the Commonwealth is not required to charge that it occurred on a specific date. Marlowe v. Commonwealth, 2 Va. App. 619, 622, 347 S.E.2d 167, 169 (1986) (citing Code § 19.2-226(6); Stapleton v. Commonwealth, 140 Va. 475, 488, 124 S.E. 237, 242 (1924)). Indeed, the Commonwealth may even prove that the offense occurred on a date "other than that alleged in the charging instrument." Id.

The circuit court here noted that Raja, through counsel, agreed to the amendment during the general district court proceedings. Raja does not dispute this fact on appeal. Instead, Raja contends that he was not bound by his prior counsel's actions in the district court because his counsel improperly agreed to "expand" the dates of the offense beyond the date that the warrant was issued. Raja cites no authority for his position in this regard.

We find no error in the circuit court's refusal to declare the warrant defective. It is clear that the legislature has granted both district courts and circuit courts broad discretion in determining whether to amend an arrest warrant. See Code §§ 16.1-129.2 and 16.1-137. Indeed, pursuant to Code §§ 16.1-129.2 and 16.1-137, as long as the warrant is not so defective as to fail to notify the defendant of the nature and character of the offense charged, both courts have the power to amend a warrant "in any respect in which it appears to be defective," on its own motion and without the consent of the parties. Thus, either court had the authority to amend the

-

warrant without the consent of Raja's counsel.

Moreover, pursuant to Code § 16.1-137, the circuit court on appeal could have accepted the warrant as amended by the general district court, amended the warrant to conform to Raja's objection concerning the dates set forth therein, or it could have reissued the warrant under its "own hand." Thus, Raja's argument that the amendment of the warrant to include dates subsequent to the date the original warrant was issued clearly fails. In fact, the circuit court could have reissued the warrant on the date of the de novo proceeding, April 30, 2002, and, according to Raja's own argument, included conduct occurring on any date prior to that time.[3] The fact that neither the general district court, nor the circuit court, took such a drastic step, does not serve to vitiate the effectiveness of the warrant. The amendment alone, which placed Raja on notice of the dates at issue, was sufficient to remedy any defect in the warrant with respect to the dates and was thus, not improper.

Accordingly, we find no error in the refusal of the circuit court to declare the warrant, as amended in the general district court, defective as a matter of law.

B.

Raja next argues that the circuit court erred in failing to exclude certain evidence presented by the Commonwealth that was not referenced in the Commonwealth's bill of particulars. We disagree.

Code § 19.2-230 permits the circuit court to "direct the

---

[3] Of course, in such a case, Raja would have had the opportunity to request a continuance. See Code § 16.1-137.

-

filing of a bill of particulars at any time before trial." "'The purpose of a bill of particulars is to state sufficient facts regarding the crime to inform an accused in advance of the offense for which he is to be tried. He is entitled to no more.'" Swisher v. Commonwealth, 256 Va. 471, 480, 506 S.E.2d 763, 768 (1998) (citations omitted). The bill is relief available to an accused, at the discretion of the court, to supplement a charging instrument which fails to "'fully and clearly set forth all the material elements of the offense,'" but not "to expand the scope of discovery in a criminal case." Sims v. Commonwealth, 28 Va. App. 611, 619-20, 507 S.E.2d 648, 652-53 (1998) (citations omitted).

Here, both the arrest warrant and the Commonwealth's response to the bill of particulars sufficiently informed Raja as to the general nature and character of the conduct for which he was to be tried. Our jurisprudence requires no more. Indeed, a bill of particulars is not a vehicle for a defendant's "fishing expedition" into the Commonwealth's evidence. See Casper v. City of Danville, 160 Va. 929, 933, 169 S.E. 734, 735 (1933) (noting that "a prosecutor is not required to file a pleading laying bare the entire case he intends to present," but merely a bill "fairly particulariz[ing] the charge or charges he intends to prosecute"); see also O'Dell v. Commonwealth, 234 Va. 672, 682, 364 S.E.2d 491, 497 (1988) (recognizing that "a defendant has no general constitutional right to discovery in a criminal case").

Nevertheless, the circuit court did not completely dispose of Raja's request to limit the Commonwealth's evidence to the instances stated in its bill of particulars. Instead, the

-

circuit court ordered Raja to raise any such objections at the
time the Commonwealth sought to produce the specific evidence to
which he objected.  The record demonstrates that Raja only
objected in this manner on one occasion.  He objected when the
Commonwealth asked Mr. Munir whether he had ever been threatened
by Raja.  However, the bill of particulars set forth the phone
calls made to Sabahat's home in April of 2000, Raja's discussion
with Sabahat's father in "May or June" of 2000 regarding "a
reason for the termination of the relationship," and Raja's
"threat[]" "to 'ruin the wedding'" and "do 'whatever it took'"
made in "May or June" of 2000.  Mr. Munir testified that the
threats he received from Raja occurred in "April to June" of
2000, after he had spoken to him both on the telephone and in
person, that Raja had questioned his daughter's reason for
refusing to marry him, had stated "it [would] not be good for
[Mr. Munir's] family" if he allowed Sabahat to refuse his
proposal, and that he wanted Sabahat to marry him "at any cost."
This evidence was clearly embraced within the arrest warrant and
the bill of particulars.

Accordingly, we find no error on the part of the circuit
court in refusing to sustain Raja's objection in this regard.
Moreover, Raja failed to raise a contemporaneous objection in the
circuit court to the remaining portions of the Commonwealth's
evidence to which he now objects on appeal. Neither did he
request an adjournment or continuance in order to remedy any
alleged prejudice.  Therefore, we do not consider this issue
further.  See Rule 5A:18; see also Harward v. Commonwealth, 5
Va. App. 468, 473, 364 S.E.2d 511, 513 (1988) ("To be timely, an

-

objection to the admissibility of evidence must be made when the occasion arises – that is, when the evidence is offered, the statement made or the ruling given.").

C.

Raja next contends that the circuit court erred in failing to sustain his motion pertaining to the Commonwealth's alleged failure to establish venue. Raja contends, as he did at trial, that the Commonwealth failed to produce any evidence of an incident or incidents that took place in the City of Richmond which aver sufficient proof to establish stalking pursuant to Code § 18.2-60.3(A).[4] We, once again, disagree.

"Venue is reviewed to determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Foster-Zahid v. Commonwealth, 23 Va. App. 430, 442, 477 S.E.2d

-

[4] During oral argument, Raja contended, for the first time, that his acquittal on the charge of assault and battery, arising out of the same incident, necessarily required a finding that the elements of stalking pursuant to Code § 18.2-60.3(A) were not satisfied and that venue was, thus, not established as a matter of law.  Because the record demonstrates that Raja raised no such argument below, we do not consider it for the first time on appeal.  See Rule 5A:18; see also Walton v. Commonwealth, 24 Va. App. 757, 485 S.E.2d 641 (1997), aff'd, 255 Va. 422, 497 S.E.2d 869 (1998) (holding defendant was precluded from raising an alternative argument for the first time on appeal); Southern Sand and Gravel Co. v. Massaponax Sand and Gravel Corp., 145 Va. 317, 328, 133 S.E. 812, 815 (1926) ("'That the action is tried in a county other than that declared by statute the proper county for its trial does not go to the jurisdiction, and does not invalidate the judgment.'" (citation omitted)); cf. Garza v. Commonwealth, 228 Va. 559, 565-66, 323 S.E.2d 127, 130 (1984) (stating that "all circuit courts have jurisdiction over all felonies committed in the Commonwealth"); Randall v. Commonwealth, 183 Va. 182, 187, 31 S.E.2d 571, 573 (1944) (recognizing that the question of venue cannot be raised for the first time on appeal).

-

759, 765 (1996) (quoting Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)), aff'd, 254 Va. 168, 489 S.E.2d 687 (1997).

> Ordinarily, a criminal case must be prosecuted in the county or city in which the offense was committed. Code § 19.2-244. To prove venue, the Commonwealth must produce evidence sufficient to give rise to a "strong presumption" that the offense was committed within the jurisdiction of the court, and this may be accomplished by either direct or circumstantial evidence.

Cheng, 240 Va. at 36, 393 S.E.2d at 605. However, Code § 18.2-60.3 contains a special provision for proof of venue when a violation of that particular statute is at issue. Specifically, Code § 18.2-60.3, as it read at the time of Raja's trial, provides as follows:

> A. Any person, who on more than one occasion engages in conduct directed at another person with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person or to that other person's family or household member is guilty of a Class 1 misdemeanor.
>
> *    *    *    *    *    *    *
>
> C. A person may be convicted under this section irrespective of the jurisdiction or jurisdictions within the Commonwealth wherein the conduct described in subsection A occurred, if the person engaged in that conduct on at least one occasion in the jurisdiction where the person is tried. Evidence of any such conduct that occurred outside the Commonwealth may be admissible, if relevant, in any prosecution under this section provided that the prosecution is

-

based upon conduct occurring within the
Commonwealth.

(Emphasis added).

Here, when considered in the light most favorable to the
Commonwealth, the evidence established that Raja appeared in the
City of Richmond on August 30, 2000.  Further, the evidence
proved that he went to MCV in Richmond, on September 2, 2000,
S'Lam's place of employment.  When Raja arrived there, Sabahat
was present.  Raja demanded to speak to S'Lam, made disparaging
comments to Sabahat, and engaged in a mutual "shoving match" with
S'Lam.  Further, and perhaps more importantly, Raja stated that
he would "make sure that [S'Lam would be] killed or I will kill
you."  Sabahat testified that this conduct "terrified" her.

Based on these facts, the circuit court judge was entitled
to conclude that Raja engaged in at least one event, in the City
of Richmond, in which he intended, or knew, that his conduct
would place Sabahat and/or S'Lam in reasonable fear of death,
criminal sexual assault, or bodily harm.  See Fortune v.
Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 27 (1992)
(noting that fact finders are "often allowed broad latitude in
determining the specific intent of the actor"); Parks v.
Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)
("[c]ircumstantial evidence is as acceptable to prove guilt as
direct evidence"); Webber v. Commonwealth, 26 Va. App. 549, 565,
496 S.E.2d 83, 90 (1998) (stating that the trier of fact is
entitled to infer that a person intends the natural consequences
of his or her actions).  Clearly, therefore, the evidence was
sufficient to give rise to a "strong presumption" that at least

-

one incident proscribed by Code § 18.2-60.3(A) took place in the City of Richmond.

Accordingly, we find no error in the circuit court's refusal to grant Raja's motion to strike the stalking charge, based upon his allegation of improper venue.

D.

Raja finally argues that the evidence presented at trial was insufficient as a matter of law to support his conviction for stalking. However, the record demonstrates that Raja raised no motion in this regard below. Indeed, his only motion pertaining to the sufficiency of the evidence on the stalking charge related specifically to his claim of improper venue – a claim which related only to the sufficiency of the incidents occurring in the City of Richmond. Accordingly, because Raja failed to properly preserve his assignment of error on this issue, we do not consider it for the first time on appeal. See Rule 5A:18; see also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.").

-

For the reasons stated above, we affirm the judgment of the circuit court.

<u>Affirmed.</u>