COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, Raphael and Senior Judge Petty
Argued by videoconference

KONRADT GUNTER TATUSKO

v.        Record No. 1500-22-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE STUART A. RAPHAEL
FEBRUARY 6, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Thomas K. Plofchan (Westlake Legal Group, PLLC, on briefs), for
appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellate courts have sometimes lamented that "the number of claims raised in an appeal is usually in inverse proportion to their merit." *Commonwealth v. Ellis*, 626 A.2d 1137, 1140 (Pa. 1993). As Judge Kethledge observed, "When a party comes to us with nine grounds for reversing the [trial] court, that usually means there are none." *Fifth Third Mortg. Co. v. Chi. Title Ins.*, 692 F.3d 507, 509 (6th Cir. 2012). Those predictions have been borne out here. Konradt Tatusko assigns 18 errors to his reckless-driving conviction. Finding that none has merit, we affirm the judgment below.

BACKGROUND[1]

One Sunday morning in September 2021, State Trooper Jonathan Fish was monitoring the flow of traffic on I-95 in Chesterfield County when he noticed a blue SUV, driven by

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

Tatusko (age 22), "traveling faster" than the other vehicles. The posted speed limit was 60 miles per hour. Fish assessed the flow of traffic to be "around 75 miles per hour." He estimated Tatusko's speed to be in the "high 90s." Fish pointed his LIDAR[2] at the SUV. The LIDAR yielded two readings: 103 and 100 miles per hour. Fish stopped Tatusko and issued a summons for "reckless by speed 100/60 (LASER)," in violation of Code § 46.2-862.

Following his conviction in the general district court, Tatusko appealed to the Circuit Court of Chesterfield County, where he appeared for a jury trial on July 19, 2022. Tatusko first asked the court to rule on his pending motion to suppress. He argued that Trooper Fish had "no reasonable articulable suspicion" to stop him. At the suppression hearing that followed, the Commonwealth called Fish as a witness. The trial court granted Tatusko's request for a rule on witnesses but, over Tatusko's objection, allowed the Commonwealth's expert, Sergeant Ihara, to remain in the courtroom. Fish testified about the traffic stop and was cross-examined. Sergeant Ihara did not testify. The trial court denied the suppression motion.

The Commonwealth then moved to strike the words "100/60 (LASER)" from the summons so that it would just read "reckless by speed" under Code § 46.2-862. The court overruled Tatusko's objection that the amendment materially altered the underlying charge. The court also denied Tatusko's motion to continue the trial date, rejecting his claim of "surprise" that the summons had been amended. After Tatusko was re-arraigned, he demanded to be sentenced by a jury if convicted. The trial court denied that request too because Tatusko had

_____

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] A LIDAR, which stands for "Light Detection and Ranging," determines "target range and speed based on the time-of-flight of laser light pulses reflected off a target." Nat'l Highway Traffic Safety Admin., LIDAR Speed-Measuring Device Performance Specifications 2 (Mar. 2013) (DOT HS 809 811), https://perma.cc/PE9Q-JGHP.

failed to demand jury sentencing in writing "at least 30 days prior to trial." Code § 19.2-295(A). Tatusko then moved for a bill of particulars "on the new charge," which the court also denied.

When the trial began, the court granted Tatusko's motion for a rule on witnesses, and the Commonwealth called Sergeant Ihara as its first witness. Over Tatusko's objections, the trial court (1) ruled that Ihara was qualified to testify as an expert in "speed measurement and speed measurement devices," and (2) received into evidence Ihara's curriculum vitae ("CV"). Ihara explained how a LIDAR works and is calibrated.

Trooper Fish then testified about Tatusko's traffic stop. During Fish's cross-examination, the trial court declined Tatusko's request to take judicial notice of the stopping-distance table in Code § 46.2-880. The trial court denied Tatusko's motion to strike and renewed motion to strike.

The jury found Tatusko guilty of reckless driving by speed. The court sentenced him to six months in jail (with all but ten days suspended) and a $500 fine. But the court granted Tatusko's motion to stay execution of the sentence pending appeal.

## ANALYSIS

"While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated presents the greatest likelihood of success." *Ellis*, 626 A.2d at 1140. We recognize that criminal defendants may sometimes insist that their lawyers raise as many arguments as possible, including arguments that, even though not frivolous, have virtually no chance of succeeding. But as we have noted, "'[w]hile "the accused has the ultimate authority" to decide whether to "take an appeal," the choice of . . . arguments to make within that appeal belongs to appellate counsel.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 242 (2022) (quoting *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019)). "Experienced advocates since time

- 3 -

beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1987)).

Tatusko disregarded that advice and pursued the blunderbuss approach instead. Counting parts and subparts, we tally 18 assignments of error. We find no merit in any of them.

### A. Amending the summons (Assignments of Error I(a-b), III(a-b), IV, V)

Tatusko claims that the trial court lacked jurisdiction to amend the summons and, after doing so, erred some more by (1) denying a continuance, (2) not requiring a bill of particulars, and (3) denying jury sentencing. We give de novo review to the interpretation of statutes and rules of court. *Epps v. Commonwealth*, 293 Va. 403, 407 (2017). We look for an abuse of discretion when the trial court grants or denies a continuance, *Barrow v. Commonwealth*, 73 Va. App. 149, 152-53 (2021), or a motion for bill of particulars, *Rams v. Commonwealth*, 70 Va. App. 12, 41 (2019).

To start, the trial court properly struck "100/60 (LASER)" from the summons. We reject Tatusko's claim that the trial court lacked jurisdiction to do that. Interpreting Code §§ 16.1-129.2 and -137, we have found it "clear that the legislature has granted *both* district courts *and* circuit courts broad discretion in determining whether to amend an arrest warrant." *Raja v. Commonwealth*, 40 Va. App. 710, 722 (2003) (emphasis added). The term "warrant" includes "a summons." Code § 16.1-129. "[A]s long as the warrant is not so defective as to fail to notify the defendant of the nature and character of the offense charged, *both* courts have the power to amend a warrant 'in any respect in which it appears to be defective . . . .'" *Raja*, 40 Va. App. at 722 (emphasis added) (quoting Code § 16.1-129.2). The court may do so "on its own motion and without the consent of the parties." *Id.* Indeed, Code § 16.1-137 explicitly permits a warrant to be amended "on appeal," language that is fatal to Tatusko's argument.

Having ignored *Raja* in his opening and reply briefs, Tatusko told us at oral argument that we must have overlooked the jurisdictional defect when we decided *Raja*. We think not. What is more, we decided *Raja* more than 20 years ago. The General Assembly is presumed to be aware of our construction of relevant statutes, *Barson v. Commonwealth*, 284 Va. 67, 74 (2012), and it has taken no action to amend Code §§ 16.1-129.2 or -137 to preclude circuit courts from amending a warrant on appeal from a general district court. The legislature's "acquiescence is deemed to be approval." *Id.*[3]

We also reject Tatusko's claim that the trial court abused its discretion by denying a continuance after amending the summons. Whether to grant a continuance is discretionary. *See* Code § 16.1-129.2 ("may grant a continuance"). An accused is entitled to a continuance "of right" only if the amendment comes "*after* any evidence has been heard." *Id.* (emphasis added). When, as here, the amendment came before trial, a continuance was warranted only "upon a showing that such amendment operated as a surprise." *Rawls v. Commonwealth*, 272 Va. 334, 345 (2006). Tatusko *claims* he was "taken by surprise because he was not prepared for the amended charge" and "not ready" for trial. But the trial court did not abuse its discretion in concluding that Tatusko "shouldn't be surprised; it's still a reckless by speed."

The amendment did "not change the nature or character of the offense charged in the original [summons]." *Id.* Indeed, Tatusko never proffered what he would have done differently or what evidence he would have offered at trial if the continuance had been granted. His vague

---

[3] Rule 1:8 also provides that leave to amend a "pleading . . . should be liberally granted in furtherance of the ends of justice." "Pleadings in a criminal proceeding" include the "warrant or summons on which the accused is to be tried." Rule 3A:9(a). Because the parties have not briefed the applicability of Rule 1:8, however, we have no occasion to address whether Rule 1:8 applies here or whether the standard for amending a summons or warrant under that rule is co-extensive with the standard under Code §§ 16.1-129.2 and -137. *See* Code § 8.01-3(E) ("In the case of any variance between a rule and an enactment of the General Assembly such variance shall be construed so as to give effect to such enactment.").

assurances alone do not suffice. *Cf. Creamer v. Commonwealth*, 64 Va. App. 185, 197-98 (2015) ("[W]here a defendant, post-trial, proffers a different, more detailed or additional basis for concluding that evidence offered during trial was relevant and should have been admitted and the trial court rejects that proffer, the appellate court may not consider the contents of the untimely proffer in reviewing the correctness of the trial court's ruling excluding the evidence.").

Nor was Tatusko entitled to a bill of particulars. After the deletion of "100/60 (LASER)," the summons was still for "reckless by speed" under Code § "46.2-862." Tatusko thus had notice of the nature and character of the charge—driving "a motor vehicle on the highways in the Commonwealth (i) at a speed of 20 miles per hour or more in excess of the applicable maximum speed limit or (ii) in excess of 85 miles per hour regardless of the applicable maximum speed limit." Code § 46.2-862. That is not all. The summons alleged when and where Tatusko committed the offense: at "I-95" near "Rt-150" at "11:05 a.m." on "9/12/2021." When, as here, the charging document "give[s] the accused 'notice of the nature and character of the offense charged so he can make his defense,' a bill of particulars is not required." *Bailey v. Commonwealth*, 259 Va. 723, 737 (2000) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 490 (1991)).

Likewise, the amendment did not reset the 30-day period before trial for Tatusko to make written demand under Code § 19.2-295 for jury sentencing if convicted. "When there is an amendment of the original warrant[,] the trial *shall proceed* on the amended warrant" unless the court decides to "grant a continuance." Code § 16.1-129.2 (emphasis added). As the Supreme Court has made clear, "the rules governing amendment of warrants and indictments should be liberally construed to *avoid* unnecessary delay by permitting amendment rather than requiring additional proceedings." *Rawls*, 272 Va. at 345 (emphasis added). So the trial court was right to proceed directly to trial after determining that a continuance was unwarranted.

*B. The suppression-motion rulings (Assignments of Error II(a-e))*

Tatusko assigns five errors to the denial of his suppression motion. On appeal, we consider "not only the evidence presented at the pretrial [suppression] hearing but also the evidence later presented at trial." *Tirado v. Commonwealth*, 296 Va. 15, 24 (2018) (quoting *Commonwealth v. White*, 293 Va. 411, 414 (2017)). We review the trial court's evidentiary rulings for an abuse of discretion. *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019).

We find no reversible error in the trial court's decision to let Sergeant Ihara remain in the courtroom during the suppression hearing. True, on request of the prosecution or accused, the statute required "the exclusion of every witness to be called," Code § 19.2-265.1, "including, but not limited to, police officers or other investigators," Va. R. Evid. 2:615(a). But Sergeant Ihara was not a witness at the suppression hearing. Trooper Fish alone testified there. Pivoting, Tatusko insists that Ihara's *trial* testimony was tainted because he heard Fish's suppression-hearing testimony. But that argument is doubly defaulted. Tatusko never objected to Ihara's testimony at trial on that basis. He therefore failed to preserve that objection under Rule 5A:18. And his argument is also outside the scope of assignment of error II(a), which addresses only the trial court's alleged violation of the rule on witnesses at "the suppression hearing," not the trial court's supposed failure to take remedial action at trial. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court.").

Next, the trial court did not abuse its discretion by letting Trooper Fish testify at the suppression hearing about his estimate of Tatusko's speed. "[E]xpert knowledge is not required for a witness to be considered qualified to make an estimate of speed [of an automobile]." *Greenway v. Commonwealth*, 254 Va. 147, 151 (1997). In fact, "*anyone* with a knowledge of time and distance is a competent witness to give an estimate." *Id.* at 152 (emphasis added). The prosecution laid an adequate foundation to support Fish's speed estimates. Fish described how

- 7 -

he positioned himself on the highway, observed the flow of traffic, noticed Tatusko's vehicle traveling faster than the flow of traffic, and estimated Tatusko's speed. We find no abuse of discretion in allowing Fish's testimony.

Nor did the trial court err by rejecting Tatusko's claim that the LIDAR was improperly calibrated. For one thing, Fish's estimate of Tatusko's speed was sufficient alone to provide reasonable suspicion that Tatusko was driving at speeds in violation of Code § 46.2-682. For another, the evidence supported the prosecution's claim that the LIDAR was properly calibrated.

Tatusko is wrong that the calibration was invalid because the LIDAR was tested for distance, not speed. Code § 46.2-882 permits calibration by "any . . . method employed in calibrating or testing any laser speed determination device." As Sergeant Ihara explained, the LIDAR sends about 200 laser pulses per second to the target and measures the nanoseconds for the pulses to reflect, calculating speed by measuring the differential. The device is calibrated at certified locations using targets at distances of 50 and 100 feet. Trooper Fish calibrated the device that way before his shift.

We also reject Tatusko's claim that the calibration was unproven for lack of an original or "true copy" of the calibration certificates under Code § 46.2-882. The Commonwealth insists that a "true copy" was introduced at the suppression hearing, a "photocopy of the original with an affidavit from the custodian of records." Commonwealth Br. 18. We need not referee that quarrel, however, because the original certificate was introduced at trial without objection. As noted above, we consider "the evidence later presented at trial" when deciding whether to affirm the trial court's suppression ruling. *Tirado*, 296 Va. at 24.

*C. The rulings at trial (Assignments of Error III(c)-(i))*

Tatusko assigns seven errors to the rulings at trial. The first three relate to Sergeant Ihara.

The trial court did not err in letting Ihara testify about how the LIDAR works. Tatusko claims that since Ihara was the first witness at trial, the facts were not yet in evidence. He says that Ihara did not have a foundation on which to give an "opinion" about Fish's LIDAR. But Ihara's description about how LIDAR devices work was *fact* testimony about how such devices work in general, how they are calibrated, and what a trooper would see if a device malfunctioned. We find no abuse of discretion in allowing that testimony.[4]

The trial court also did not abuse its discretion by refusing to take judicial notice of the table in Code § 46.2-880 showing stopping distances required at different speeds. Tatusko wanted to use that table when cross-examining Trooper Fish about how many feet Tatusko's vehicle had traveled from the time Fish first spotted the car until Fish got a distance reading from the LIDAR. The trial court declined to admit the table, ruling it was irrelevant and would confuse the jury. Indeed, the Supreme Court has "repeatedly discouraged" instructing a jury "on the tables of speed and stopping distances unless it is clearly supported by the evidence." *Bunn v. Norfolk, Franklin & Danville Ry. Co.*, 217 Va. 45, 51 (1976) (collecting cases). Given that admonition, we see no abuse of discretion in disallowing its use here.

Nor did the trial court abuse its discretion in refusing to sustain Tatusko's objections during the prosecutor's closing argument. At one point, the prosecutor said—"What I find interesting about this case is that"—until interrupted by the objection. At another, the prosecutor remarked, "I found" defense counsel's questions of the two officers "confusing." "Trial judges customarily and understandably accord counsel reasonable latitude in making their arguments." *Artis v. Commonwealth*, 213 Va. 220, 227 (1972). To be sure, "attorneys should assiduously

---

[4] Tatusko also complains that the trial court erred in admitting Ihara's CV. Assuming without deciding that the CV was inadmissible and that the error was preserved, we find it was harmless because Tatusko does not dispute that Ihara's knowledge, training, and experience provided the necessary foundation for him to explain the facts about how the LIDAR operates.

refrain from injecting their own personal opinion of the evidence, or personal opinion as to the competency of witnesses and the weight to be accorded their testimony." *Id*. But the trial court did not abuse its discretion in determining that the prosecutor's statements here did not cross that line.

Finally, the trial court did not err in overruling Tatusko's motions to strike. The "relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). The posted speed limit on I-95 where Tatusko was stopped is 60 miles per hour. Trooper Fish estimated Tatusko's speed to be in the "high 90s." And the LIDAR reported readings of 103 and 100 miles per hour. Thus, a rational factfinder could have found that Tatusko was traveling (i) "20 miles per hour or more" over the speed limit, "or (ii) in excess of 85 miles per hour." Code § 46.2-862.

CONCLUSION

Having looked for reversible error among the 18 errors assigned, we found none.

*Affirmed.*