COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Lorish
Argued by videoconference

TONY BRIAN DIAZ

                                    MEMORANDUM OPINION[*] BY

v.     Record No. 1072-23-1           JUDGE JUNIUS P. FULTON, III
                                          JANUARY 28, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kevin M. Duffan, Judge

Hannah E. Hopkins, Assistant Public Defender, for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General; Jessica M. Bradley, Assistant Attorney
General, on brief), for appellee.


In a bench trial held on May 25, 2023, Tony Diaz was convicted of petit larceny in

violation of Code § 18.2-96. Diaz argues that the evidence was insufficient to support his

conviction based on the offense identified in the charging document—larceny of a cellphone.

Because we agree with Diaz that the Commonwealth failed to meet its burden of proof, we

reverse the trial court's judgment.

BACKGROUND[1]

On September 6, 2022, Diaz went to iPhone Repair VB, Inc. with two cell phones, both

of which belonged to Diaz. Diaz asked an employee to repair the first iPhone and asked for a

quote to repair the second iPhone. The shift manager on duty, Julie Kafka, determined that the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing
party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting
*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

first iPhone required a new screen. Diaz left the store, and Kafka repaired his phone by replacing the screen.

When Diaz returned to retrieve his phone, he asked Kafka if he might use his now repaired iPhone to transfer money to pay for the repair, as he didn't have any cash or cards on hand to pay for the screen. The cost to replace the screen on Diaz's first iPhone was $126.14. This cost did not include any "labor charge"; it reflected only the cost of the new phone screen. After an hour of attempting to secure payment, Diaz left the store with both iPhones, stating, "I'm sorry. I can't pay for anything," and fled on foot.

Diaz was charged by warrant for petit larceny under Code § 18.2-96 for allegedly stealing a "cellular telephone valued at less than $1,000.00 and belonging to Iphone Repair VB Inc." After being convicted in general district court, Diaz appealed to the circuit court. At trial, the Commonwealth called Kafka to testify as to the aforementioned facts. The Commonwealth introduced into evidence the store's video surveillance footage showing Diaz grabbing his second iPhone and running out of the store. Kafka also testified that in the event a customer could not pay for a product, the store's policy was to remove the product from the customer's device, keep the product, and return the device to the customer. After the incident, Kafka contacted the police and reported the theft.

Following Kafka's testimony, the Commonwealth rested its case. Diaz subsequently moved to strike the Commonwealth's evidence, arguing that "Diaz is charged with petit larceny of a cellular telephone . . . [and that] the Commonwealth . . . failed to meet the elements of larceny in two ways." First, Diaz argued that the Commonwealth had failed to prove that the store was "the owner of the . . . phone." Diaz argued that, in fact, "[t]hey conceded that it was . . . Diaz's phone that he brought in [to the store]." Second, Diaz argued that, to the extent that any crime was committed, the material conduct was Diaz's failure to "pay for the services," but

- 2 -

that no property was taken. Diaz argued that the "contract" at issue in the case "was a contract for services" and that Kafka's testimony supported this contention, as she testified that "it's kind of all together. It's all kind of mashed into the same contract. That $120 -- however much is at issue -- is the -- for the service contract."

In response, the Commonwealth argued that Kafka's testimony belied Diaz's contentions and that the contract was not simply a service contract, but involved an exchange of a good—the phone screen—which did in fact belong to the store. The Commonwealth maintained that the screen was a "whole separate piece of property" from the iPhone itself and that it "could be removed" from the iPhone. The Commonwealth failed to address Diaz's argument pertaining to the language of the warrant charging the theft of a "cellular telephone" only. The trial court denied Diaz's motion.

Diaz did not put on any evidence in his defense, and subsequently renewed his motion to strike, incorporating his former arguments and arguing anew that:

> the Commonwealth is moving the goalpost a little bit by now
> saying it's the screen and not the -- the phone. I think they put in
> their warrant that it was a phone. They did not put larceny of a
> screen in their warrant, and I think now to raise that it's a larceny
> of a screen raises due process issues because the defense that was
> prepared today was for larceny of a phone as charged. The time to
> amend this to larceny of a screen was prior to trial.

In response, the Commonwealth argued that Diaz was not "surprise[d]" by the idea that he was charged with petit larceny of the *screen*, given that that theory was "argued downstairs [at the general district court]." The Commonwealth then argued that "[a]dditionally, the screen itself [was] part of the phone."

The trial court again denied Diaz's motion and ultimately found him guilty of petit larceny. In denying his motion, the trial court stated that "the fact that the word screen wasn't inserted after the word telephone in the warrant does not make the warrant so defective that the

court cannot still find the defendant guilty based on the terms that have been written into this actual warrant itself." The trial court then went on to state that Diaz "always knew it was the screen so, therefore, the Commonwealth didn't have to prove that it was the [phone]."

ANALYSIS

On appeal, Diaz argues that the trial court erred in finding him guilty because the evidence was insufficient to prove that the rightful owner of the cellphone—Diaz—was deprived of his or her property. Diaz contends that the Commonwealth had to prove that Diaz stole a "cellular telephone" as provided in the arrest warrant, not a cellphone *screen*. The Commonwealth takes issue with Diaz's framing of the issue on appeal, arguing that the evidence was sufficient to prove that Diaz stole the cellphone *screen* and that that was all the Commonwealth was required to prove, per the charging instrument.

I. Standard of Review

This Court reviews the sufficiency of the evidence "in the 'light most favorable' to the Commonwealth," as the prevailing party below. *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015)). "The judgment of the trial court, sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless 'plainly wrong or without evidence to support it.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Britt v. Commonwealth*, 276 Va. 569, 573-74 (2008)). When reviewing the sufficiency of the evidence, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319).

II.  The Scope of the Warrant

A sufficiency of the evidence claim is necessarily linked to the underlying charge.  The evidence must be sufficient to prove the essential elements *of the crime charged*.[2]  *In re Winship*, 397 U.S. 358, 364 (1970) (holding that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the *crime with which he is charged*." (emphasis added)).  A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial.  The fatal variance doctrine establishes that a variance between the language of an *indictment* and the evidence at trial is fatal "only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged." *Stokes v. Commonwealth*, 49 Va. App. 401, 406 (2007) (quoting *Hawks v. Commonwealth*, 228 Va. 244, 247 (1984)).

"A [charging instrument] need not be drafted in the exact words of the applicable statute so long as the accused is given notice of the nature and character of the offense charged." *Black v. Commonwealth*, 223 Va. 277, 282 (1982) (citing *Wilder v. Commonwealth*, 217 Va. 145, 147 (1976)).  Moreover, extraneous words included in the charging instrument that are mere "surplusage" will not "invalidate" such charging instruments.  *Id.*  However, "[i]f the unnecessary word or words inserted in the indictment describe, limit or qualify the words *which it was necessary to insert therein*, then they are descriptive of the offense charged in the indictment and cannot be rejected as surplusage.  The offense as charged must be proved." *Mitchell v. Commonwealth*, 141 Va. 541, 560 (1925) (emphasis added).  "It is elementary that

---

[2] The Commonwealth argues that Diaz has waived his argument because he does not make any argument regarding extension of the fatal variance doctrine beyond indictments to warrants on brief.  But the sufficiency of the evidence is inherently linked to the crime charged in the charging document, here, the warrant.

what need not be proved need not be alleged, but sometimes . . . the pleader goes beyond what is necessary . . . and the result is that he must prove what he has alleged unless the unnecessary allegation can be rejected as surplusage." *Blake v. Commonwealth*, 288 Va. 375, 392 (2014) (quoting *Mitchell*, 141 Va. at 555).

The Commonwealth argues that the fatal variance doctrine only applies to indictments and not to warrants. We disagree. "[W]arrants must be sufficient to 'point out the offense for which the defendant is to stand trial.'" *Raja v. Commonwealth*, 40 Va. App. 710, 721 (2003) (quoting *Bissell v. Commonwealth*, 199 Va. 397, 399 (1957)). "[I]n describing the offense charged, the 'description must comply with Rule 3A:6(a), which provides that an indictment must give an accused notice of the nature and character of the offense charged against him.'" *Id.* (quoting *Williams v. Commonwealth*, 5 Va. App. 514, 516 (1988)); *see also Greenwalt v. Commonwealth*, 224 Va. 498, 501 (1982) (holding that "an arrest warrant must describe the offense charged," the description "must comply" with the relevant Rules of the Supreme Court of Virginia, and that just like criminal indictments, arrest warrants must "give an accused notice of the nature and character of the offense" (citing *Wilder*, 217 Va. 145).

Code § 19.2-220 prescribes the basic elements that a criminal indictment must contain: "The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) *describing the offense charged*, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date." (Emphasis added). Because the Supreme Court has held that arrest warrants "must give an accused notice of the nature and character of the offense," it was therefore *necessary* that the Commonwealth "describe the offense charged"—here, petit larceny. *Greenwalt*, 224 Va. at 501. Requiring sufficient notice ensures that a defendant "can adequately prepare to defend against his accuser." *Willis v. Commonwealth*, 10 Va. App. 430, 437-38

(1990). The Commonwealth *could have* chosen to charge Diaz with stealing "goods [or] chattels of the value of less than $1,000" from iPhone Repair VB, Inc.[3] However, the Commonwealth instead chose to go further, and specify the exact "goods" that Diaz stole—a "cellular telephone." Because this language "limit[s and] qualif[ies] the words which it was necessary to insert therein, then they are descriptive of the offense charged in the indictment and cannot be rejected as surplusage." *Mitchell*, 141 Va. at 560.

We also note the ease with which the Commonwealth (or even the trial court) could have amended the warrant. "[T]he fullest provision is made for all amendments of the original warrant 'in any respect in which it appears to be defective.'" *Raja*, 40 Va. App. at 721 (quoting *Malouf v. City of Roanoke*, 177 Va. 846, 853 (1941)). "The Supreme Court of Virginia has . . . held that 'the judge of the trial court . . . has the power to amend [an arrest] warrant or, upon good reason, to dismiss it and issue a new one, under his own hand, properly charging a violation.'" *Id.* (second and third alterations in original) (quoting *Robinson v. Commonwealth*, 206 Va. 766, 769 (1966)). Here, the Commonwealth was free to amend the language of the warrant at any time to specify that Diaz had stolen the cellphone *screen*, not the cellphone itself. The record is unclear as to why neither the Commonwealth nor the trial court chose to do so. But no matter what the reason, the Commonwealth was thus saddled with the language of the warrant and was required to prove the crime as charged.

---

[3] The entirety of Code § 18.2-96 states:

> Any person who:
>
> 1. Commits larceny from the person of another of money or other thing of value of less than $5, or
>
> 2. Commits simple larceny not from the person of another of goods and chattels of the value of less than $1,000, except as provided in clause (iii) of § 18.2-95, shall be deemed guilty of petit larceny, which shall be punishable as a Class 1 misdemeanor.

The Commonwealth argues that the words "cellular telephone" can be read to include "cellular telephone screen." In essence, the Commonwealth argues that the screen was so integrated into the phone that it became a unitary object and should be understood interchangeably. While the trial court could have made such a factual finding, the only evidence on the record is that the cellular device itself is distinct from the screen, which may be freely removed and attached. Consistent with this, at trial, the Commonwealth argued they were "separate item[s]." We agree that a "cellular telephone," and a "cellular telephone screen," are two distinct items and that the recitation of one in the arrest warrant cannot be read to include the other, as the Commonwealth argues on appeal.[4]

The Commonwealth also argues on appeal that Diaz was not prejudiced by the language of the warrant. The Commonwealth cites to *Ellis v. Commonwealth*, 75 Va. App. 162 (2022), for the proposition that even when a warrant contains an error, a defendant can still be properly convicted insofar as the warrant "puts the accused on notice of the 'gravamen of the crime' charged." *Id.* at 169 (quoting *Williams v. City of Petersburg*, 216 Va. 297, 302 (1975)); *see also Groffel v. Commonwealth*, 70 Va. App. 681, 689 (2019) (describing "gravamen" as the "essence" of the crime). This argument is unavailing because the language at issue here *modifies* the "essence" of the crime charged; in other words, this argument is merely a "repackaging" of the Commonwealth's former arguments that: 1) the words "cellular telephone" were mere surplusage, and that 2) they can be read to mean "cellular telephone screen." However, we have already rejected these arguments. In effect, the Commonwealth argues that the "gravamen" of

---

[4] To the extent that the Commonwealth argues that arrest warrants do not require the same level of "particularity" as indictments, *see, e.g.*, *Rawls v. Commonwealth*, 272 Va. 334 (2006), we find that argument unavailing. *Cf. Harley v. Commonwealth*, 131 Va. 664, 667 (1921) ("[I]n prosecutions for petty misdemeanors the same particularity is not expected or required in the charge made in the warrant."). Here, the issue is not that the warrant was *too general*, but instead that the warrant was *too specific*. For the reasons stated in this opinion, such a difference carries an important distinction.

the crime charged here is that Diaz stole something that belonged to iPhone Repair VB, Inc. and that Diaz was therefore on notice of the charge against him, having been previously tried in general district court.[5]  Again, though the Commonwealth *could have* chosen to utilize such general language in the charging instrument, the Commonwealth chose not to and instead went further, charging that the "goods" that Diaz stole was a "cellular telephone."  This additional language was not mere surplusage, as outlined above, and any failure to prove that Diaz stole a "cellular telephone" as opposed to a "cellular telephone screen" constitutes a fatal variance.  *See Hairston v. Commonwealth*, 2 Va. App. 211, 217 (1986) ("We conclude that the rule in *Mitchell*, viewed in its proper context in relationship to the whole of that opinion, requires that when an allegation of variance is based on unnecessary words in an indictment, the unnecessary word or words in the indictment must be descriptive of that which is 'legally essential' to the charge. Stated another way, the unnecessary language must have a material effect on the offense charged and on the proof required to convict under that charge.").  Because the description of the crime is "legally essential" to the charge, the words "cellular telephone" were not mere surplusage based on our prior precedent, and, therefore, the Commonwealth was saddled with this language in the warrant in undertaking to prove the crime as charged.

### III.  Sufficiency of the Evidence

Having clarified the scope of the indictment, and that the Commonwealth was required to prove that Diaz stole a "cellular telephone" from iPhone Repair VB, Inc., we now turn to the question whether the evidence presented at trial was sufficient to prove the crime as charged. The evidence was not sufficient to prove that Diaz stole a cellular telephone belonging to another because Diaz owned the cell phone and iPhone Repair VB owned only the screen that they

---

[5] The record before us does not reflect what occurred in the general district court.

affixed to the phone.[6]  Because this case rises and falls on our determination as to the proper scope of the charging instrument, this conviction must fall.  We agree, and hold that as a matter of law, the evidence introduced at trial was not sufficient to sustain Diaz's conviction for petit larceny.  Therefore, we reverse the trial court's judgment.

## IV.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court.

*Reversed and final judgment.*

---

[6] The law recognizes the possibility that someone might commit larceny from a bailee, understood as someone with lawful possession of the item.  We do not hesitate to uphold a decision of the trial court for a different reason, but "cases are only proper for application of the right result for the wrong reason doctrine when the evidence in the record supports the new argument on appeal, and the development of additional facts is not necessary." *Perry v. Commonwealth*, 280 Va. 572, 579 (2010).  The Commonwealth did not argue below that iPhone Repair VB was the bailee of the phone after the screen was installed, and far from suggesting that iPhone Repair VB had a possessory interest in the phone, the testimony below was that the store would remove the screen and return the phone in the event a customer could not pay.