COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey
Argued by videoconference


JERRY WAYNE CULBERTSON, SR.

                                           MEMORANDUM OPINION[*] BY
v.       Record No. 0772-24-2           CHIEF JUDGE MARLA GRAFF DECKER
                                                 NOVEMBER 25, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
Charles J. Maxfield, Judge Designate[1]

Charles E. Haden for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury found Jerry Wayne Culbertson, Sr., guilty of multiple sex crimes against a child.

*See* Code §§ 18.2-61, -67.1, -67.2, -67.3, -370. Culbertson appeals those convictions, arguing

that he was denied his statutory and constitutional rights to a speedy trial and that the evidence

was insufficient. For the following reasons, the Court affirms the convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Maxfield presided at the trial and sentencing. Judge Jeffrey W. Shaw presided at
the pre-trial hearing on the speedy trial motion.

BACKGROUND

This case stems from Culbertson's sexual assault of A.W.,[2] who was seven years old at the time. Almost two years elapsed between his indictments and his trial. Relevant to this appeal, we set forth the facts of the case related to both the offenses and the trial.

The appellate court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, the Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

## A. The Offenses

At the time of the offenses, A.W. lived with her aunt but spent some weekends with her mother and her "stepfather," Fred Culbertson, the appellant's son.[3] Culbertson was present on at least one occasion when A.W. visited her mother and Fred. On that day, Culbertson called A.W. over to the shed near the residence.

After A.W. entered the shed, Culbertson told her that he would show her "something" that she "couldn't tell anyone about." He asked her to sit on a stool and then pulled down his pants and her pants. He exposed his penis, asked her to take off her shirt, and then "licked" her breasts and vagina. Culbertson also asked her "to suck his penis." He then put his penis inside her vagina. A.W. testified that when Culbertson inserted his penis, "he held [her] and he did not

---

[2] The victim will be referred to by her initials to protect her privacy.

[3] A.W. referred to Fred as her stepfather, but he was not married to her mother.

let go . . . until he was done." During the same incident, he also put his fingers and tongue inside her vagina. She "did everything he asked" or "told [her] to do."

Culbertson stopped his assault when A.W.'s mother called for her. But before A.W. left the shed, Culbertson "grabbed [her] arm and told [her] not to tell anyone or there would be consequences." Because she was afraid, A.W. did not report the attack until eight years later.

B. Procedural History

Culbertson was indicted on March 28, 2022, and arrested almost a month later on April 20. That June, Culbertson agreed to a bench trial the following September. The court's June 15, 2022 order stated that Culbertson "waives any speedy trial implications by the setting of this case on [September 26, 2022]." In August, the court granted Culbertson's request for a competency evaluation. Five days later, he asked for funding for an investigator and also moved for a continuance. At a hearing on September 26, 2022, the court granted the motion for an investigator and continued the case to the following November "for a motions hearing and to set a trial date."

A bench trial was set for March 27, 2023, but, after Culbertson demanded a jury trial, the trial was continued to July 27, 2023. Days before the trial was scheduled to take place, however, the court granted defense counsel's motion to withdraw, appointed new counsel, and continued the case to August 16, 2023, to set another trial date. By agreement of counsel, the case was set for trial on October 4, 2023. Five days before the set trial date, Culbertson's second attorney moved to withdraw. The court granted the motion, again appointed new counsel, and continued the case yet another time to set a new trial date. On October 10, 2023, Culbertson agreed to a jury trial to begin on January 25, 2024.

On November 13, 2023, Culbertson filed a motion to dismiss the indictments on speedy trial grounds. After reciting the procedural history of the case and acknowledging the applicable

law did not favor Culbertson, defense counsel stated that his client specifically "directed" him to file the motion. Culbertson contended his rights were violated because "he was not required to sign" the June 15, 2022 order and he disagreed with the provision in the order that he "waive[d] any speedy trial implications" by setting the case for trial on September 26, 2022. The court denied the motion.

## C. The Trial

Culbertson's trial began on January 25, 2024. At trial, A.W. testified that she believed the offenses occurred in the spring based on the temperature, which she described as neither warm nor cold but "right in the middle." She was unsure of the year but thought it was 2013. A.W. said that she was seven or eight years old and her brother was a baby, less than a year old.

After the attack, A.W.'s mother asked her why she was crying and bleeding. A.W. told her she had fallen. A.W. then went to the bathroom and cut her leg to try to explain the presence of blood.

A.W.'s mother testified that the cut did not seem to account for all the blood that was present. The victim's mother also believed that A.W. seemed "very out of it, very upset, more upset than you would be over a fall." A.W. insisted that "nothing [was] wrong" other than her injury from her fall. A.W. testified that she lied about the injury because she "felt like [she] had just been threatened with [her] life." She added that she did not immediately "realize that what was done was wrong."

A.W. did not return to her mother's home after that day. She went to live with her grandmother in January 2013. A.W. did not tell anyone about the sexual abuse until she ultimately reported it to her high school guidance counselor in 2020.

A.W., who was eighteen years old at the time of trial, testified that, after the crimes occurred, she "was very angry" and "would cry a lot." She said she "used to break" and "throw

stuff" and "was a danger to [her]self and everyone around [her]." She resisted wearing "girly clothes" and preferred "baggy clothing" so her "body wasn't visible." A.W. received psychiatric treatment at "three or four mental hospitals." She did not report the sexual assault during that time because of Culbertson's threat. A.W. testified that she "was scared [she] was going to die if [she] did tell someone." She was not sure who she could trust and thought no one would believe her. At the same time, A.W. was afraid that other family members would "murder" Culbertson if they learned what he had done.

Fred testified that his father stayed with them for about two to three months beginning soon after A.W.'s brother was born in October 2012. According to Fred, the weather was "warm." During this time, Fred noticed "drastic changes" in A.W.'s behavior. He testified that if A.W. had told him about the sexual abuse, Culbertson "wouldn't be sitting right there [in court]." A.W.'s mother corroborated Fred's testimony that Culbertson stayed with them a few weeks after the baby was born.

After the Commonwealth rested, Culbertson moved to strike the evidence as to all counts. He argued that A.W.'s testimony that the assault happened in the spring was outside the dates fixed by the bill of particulars. The Commonwealth responded that A.W. "wasn't sure exactly when it happened" and that other witnesses "set the time frame." Culbertson also argued that A.W.'s testimony was not sufficiently detailed and was no more than a "bare-bones definition of the act." The court denied the motion.

Culbertson testified on his own behalf and denied committing the offenses. He said that he stayed with Fred for fourteen to eighteen days but A.W. was not there. He first claimed that he was in a wheelchair in 2012 and 2013 but later admitted he was only using a cane when he stayed with his son.

- 5 -

After both parties rested, Culbertson renewed his motion to strike. The trial court denied the renewed motion. With regard to A.W.'s testimony that the incident took place in the spring, the court concluded that A.W., who was seven years old when the offenses occurred, reasonably thought "it was the spring" because she remembered "it was a nice day."

The jury found Culbertson guilty of rape of a victim less than thirteen years old by a person over eighteen years old, object sexual penetration of a victim less than thirteen years old by a person over eighteen years old, aggravated sexual battery of a victim less than thirteen years old, indecent liberties with a child less than fifteen years old, and two counts of sodomy of a victim less than thirteen years old by a person over eighteen years old. *See* Code §§ 18.2-61, -67.1, -67.2, -67.3, -370. The court sentenced Culbertson to four life sentences plus twenty years of incarceration.

ANALYSIS

Culbertson contends the trial court erred in denying his motions to dismiss on statutory and constitutional speedy trial grounds. He also argues the evidence was insufficient to support the convictions. We address these arguments in order.

I. Speedy Trial

A. Standard of Review

In Virginia, "the statutory right to a speedy trial and the constitutional right to a speedy trial are separate, though related, rights that utilize different frameworks and focus on different elements." *Osman v. Commonwealth*, 76 Va. App. 613, 656 (2023) (quoting *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022)). "[B]ecause both statutory and constitutional speedy trial challenges present 'a mixed question of law and fact,' this Court gives deference to the trial court's factual findings but reviews statutory interpretations and legal conclusions *de novo*." *Id.* at 657 (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)). The factual

- 6 -

findings "may not be disturbed unless 'plainly wrong' or 'without evidence to support them.'" *Ali v. Commonwealth*, 75 Va. App. 16, 33 (2022) (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

## B. Statutory Speedy Trial

"Code § 19.2-243 provides specific time limits 'within which an accused must be tried, absent tolling or other statutory exceptions.'" *Osman*, 76 Va. App. at 657 (quoting *Brown*, 75 Va. App. at 406). Because Culbertson was held in continuous custody after his arrest on the indictments, his trial had to begin within five months of his arrest.[4] *See* Code § 19.2-243. Five months is equivalent to "152 and a fraction days." *Ballance v. Commonwealth*, 21 Va. App. 1, 6 (1995).

Culbertson was arrested on April 20, 2022. Therefore, absent tolling or exceptions, the trial had to commence by September 20, 2022, to comply with the requisite statutory time limits. For the reasons that follow, although his trial did not begin until January 25, 2024, no statutory speedy trial violation occurred.

Culbertson agreed to an initial trial date that was 159 days after his arrest, and he either requested or agreed to numerous continuances after the initial trial date was set.[5] Approximately

---

[4] The Commonwealth stated in its brief that the applicable time computation began with the date of Culbertson's indictments, March 28, 2022. But Culbertson was arrested after he was indicted, and so the operable date is the date of his arrest, April 20, 2022. *See* Code § 19.2-243.

[5] The June 15, 2022 order setting trial for September 26, 2022, specifically stated that Culbertson "waives any speedy trial implications by the setting of this case." The defendant's express waiver forecloses his "right to assert the speedy trial statute as a bar to prosecution." *Mitchell v. Commonwealth*, 30 Va. App. 520, 529 (1999). The waiver did not specify the time period to which it applied. Arguably, this waiver could be read broadly to preclude Culbertson from raising a speedy trial claim "for the delays preceding the waiver" and thereafter until the waiver was revoked on November 13, 2023, when he filed the motion to dismiss on speedy trial grounds. *Id.* at 529-30. However, the waiver language is unclear as to its scope, so, for purposes of our analysis, we treat it as applying to only the period of time until the September 26, 2022 trial date. *See id.* at 529 (distinguishing between a general waiver and a limited one that applies only to a specified time period). *See generally Durham v. Commonwealth*, 303 Va. 310, 322 n.2

one month before the initial trial date, defense counsel requested a competency examination for Culbertson and moved to continue his trial date. *See Heath v. Commonwealth*, 261 Va. 389, 393 (2001) (holding that "the defendant's motion for a psychiatric examination, which included a request to determine the defendant's competency to stand trial . . . triggered the statutory tolling provisions of Code § 19.2-243(4)").

Defense counsel and the prosecutor then agreed to set the case for a bench trial on March 27, 2023. On that date, Culbertson demanded a jury trial and acquiesced in the court's decision to continue the case until July 27, 2023, for trial by jury. On July 19, 2023, the court granted the first defense attorney's motion to withdraw as counsel. Culbertson agreed to rescheduling his jury trial to begin on October 4, 2023. On September 28, 2023, his second attorney moved to withdraw as counsel, necessitating the appointment of a third attorney and another continuance. Culbertson agreed to a trial date of January 25, 2024, and the trial commenced that day.

The multiple continuances tolled the statutory time period.[6] Code § 19.2-243(4) provides that tolling occurs if the delay is caused by a "continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth." *See also Commonwealth v. Hutchins*, 260 Va. 293, 295-98 (2000) (holding that the time between the date on which the defendant agreed to setting the trial and the ensuing trial date was due to a continuance to which he had not objected). The statute "clearly demonstrate[s] that in order to avoid the tolling provision, the defendant must be adverse to the

---

(2024) (recognizing that deciding a case on the merits rather than on waiver principles can provide "the *best* and narrowest ground[]" for resolution (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

[6] There is "no difference between a waiver of the defendant's right to be tried within the statutory period by agreeing to or acquiescing to a continuance beyond the time period permitted under the statute, and the defendant initially agreeing to or acquiescing to a trial date beyond the statutory period." *Hudson v. Commonwealth*, 39 Va. App. 240, 249 (2002), *aff'd*, 267 Va. 36 (2004).

granting of the continuance and must affirmatively express his objection." *Young*, 297 Va. at 453 (quoting *Howard v. Commonwealth*, 281 Va. 455, 460 (2011)). Because Culbertson either requested, or did not object to, the granted continuances, he has no basis for claiming a speedy trial violation with respect to those delays.

Culbertson argues that he did not personally consent to the continuances. But the statute "makes clear that the actions of either 'the accused *or his counsel*' may constitute a waiver of the accused's right to invoke the statute's time limitations." *McCray v. Commonwealth*, 44 Va. App. 334, 342 (2004) (quoting Code § 19.2-243). Because his attorneys agreed to the continuances, the fact that Culbertson did not personally endorse the court orders does not mean he did not consent.

Culbertson agreed to setting an initial trial date outside the five-month period. He then requested or agreed to the several continuances in the case and to setting the trial on January 25, 2024. Consequently, the trial court did not err in concluding that Culbertson's statutory right to a speedy trial was not violated. *See Osman*, 76 Va. App. at 659.

### C.  Constitutional Speedy Trial

Unlike "the statutory right to a speedy trial, the constitutional right to a speedy trial . . . 'is not tied inextricably to calendar dates.'" *Id.* (quoting *Brown*, 75 Va. App. at 406-07). Rather, constitutional challenges are assessed under the Supreme Court's balancing test enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972). The test "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Barker*, 407 U.S. at 530. The Court identified four factors that reviewing courts must weigh: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* We address each of the *Barker* factors in turn and conduct the requisite balancing test.

The analysis begins with the length of the delay. A delay of one year or more is presumptively prejudicial and warrants consideration of the remaining three *Barker* factors. *See Osman*, 76 Va. App. at 660. The time from Culbertson's indictments in March 2022 to his trial in January 2024 exceeded one year. Therefore, the delay is presumptively prejudicial, and this factor is weighed against the Commonwealth.

As to the second factor, the reason for delay, "any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes." *Ali*, 75 Va. App. at 42. It is clear from the record that except for the 149 days between Culbertson's indictments on March 28, 2022, and August 24, 2022, when the court granted Culbertson's motion for a competency evaluation, the delays in trying the case are attributable to Culbertson. In addition to asking for a competency evaluation, he filed numerous motions that required pre-trial hearings to resolve. And continuances were necessary when both his first and second attorneys withdrew from the case shortly before the scheduled trial dates.

As to the 149-day or five-month delay, in assessing delays attributable to the government, "three categories of fault" are considered: "delay that is deliberately improper, merely negligent, and valid and unavoidable." *Reedy v. Commonwealth*, 77 Va. App. 81, 96 (2023) (quoting *Ali*, 75 Va. App. at 42). In this case, the delay chargeable to the Commonwealth occurred "in the ordinary course of the administration of justice." *Osman*, 76 Va. App. at 662 (quoting *Ali*, 75 Va. App. at 37). "When 'no evidence indicates that the prosecution caused the delay either intentionally or negligently,' such delay 'in the ordinary course' is deemed 'valid and unavoidable,' thus making it fully justified." *Id.* (quoting *Ali*, 75 Va. App. at 45).

The record reflects that the Commonwealth bore no fault in the delay and proceeded "with reasonable diligence." *Doggett v. United States*, 505 U.S. 647, 656 (1992). As a result,

the five-month delay attributable to the Commonwealth between March 28, 2022, and August 24, 2022, is not weighed against it. All the other delay was at the hands of Culbertson.

The third factor of the *Barker* test examines the defendant's assertion of his speedy trial right. Significantly, Culbertson did not assert his right until his November 13, 2023 motion to dismiss on speedy trial grounds, which he filed more than twenty months after the indictments and just two months before trial. The courts have recognized that "delay in asserting the right weighs against finding a violation." *Ali*, 75 Va. App. at 46; *see Shavin v. Commonwealth*, 17 Va. App. 256, 270 (1993). Culbertson's unexplained delay in asserting the alleged violation is weighed against him.

Further, it is apparent from the record that Culbertson's attorney filed the speedy trial motion only because his client requested that he do so. The motion set forth the pertinent facts and applicable law, which did not favor Culbertson. In examining the third factor, a court need not "attach[] significant weight to a purely *pro forma* objection." *Brown*, 75 Va. App. at 409 (quoting *Rogers v. Commonwealth*, 5 Va. App. 337, 347 (1987)). In *Brown*, the defendant's motion conceded that it was not likely any court would find the length of the delay in the case was a constitutional violation. *Id.* Similarly, here, the Court views Culbertson's claim in the trial court to be a "*pro forma* objection," which is not entitled to significant weight. *See id.*

The fourth *Barker* factor considers whether Culbertson was prejudiced by the delay. *Barker*, 407 U.S. at 532 (identifying three types of interests applicable to determining prejudice: (1) "prevent[ing] oppressive pretrial incarceration"; (2) "minimiz[ing] anxiety and concern of the accused"; and (3) "limit[ing] the possibility that the defense will be impaired"). Culbertson asserts only that "[h]e feels that this case has been going on very long." Generalized assertions do not establish prejudice to support a speedy trial claim. *See Osman*, 76 Va. App. at 670-71; *Ali*, 75 Va. App. at 50. Accordingly, the fourth factor is weighed against him.

- 11 -

Based on this analysis, the Court concludes that the four *Barker* factors, when considered together, are weighed against Culbertson. Consequently, the trial court did not err in finding there was no constitutional speedy trial violation.

## II. Sufficiency of the Evidence

### A. Standard of Review

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). The Court must uphold the convictions unless the fact finder was plainly wrong or there is no supporting evidence. *Cornell v. Commonwealth*, 76 Va. App. 17, 28 (2022). The reviewing court defers to the fact finder's "finding[s] of witnesses' credibility" unless the witness testimony is "inherently incredible." *Sample v. Commonwealth*, 303 Va. 2, 16 (2024) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)).

The "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "relevant question" is "whether any rational trier of fact," after reviewing the evidence in the light most favorable to the prosecution, "could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Along with the appellate standard of review is the principle that "circumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial

evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."

*Dowden v. Commonwealth*, 260 Va. 459, 468 (2000); *see Walker v. Commonwealth*, 79 Va. App.

737, 743-44 (2024). And the hypotheses of innocence to be excluded must flow "from the

evidence itself, and not from the imagination of defendant's counsel." *Sample*, 303 Va. at 17

(quoting *Tyler v. Commonwealth*, 254 Va. 162, 166 (1997)). "Circumstantial evidence is not

'viewed in isolation' because the 'combined force of many concurrent and related circumstances,

each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable

doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration

in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

It is within this well-established legal backdrop that the Court considers the sufficiency

challenges.

### B. Sufficiency as to the Time Frame of the Offenses

Culbertson argues that the Commonwealth did not prove the offenses occurred between

the dates identified in the bill of particulars, which stated that the crimes were believed to have

occurred between October 13, 2012, and January 12, 2013. He contends that A.W.'s testimony

about the date of the sexual assaults was "vague" and her statement that the crimes occurred in

the "springtime" conflicted with the Commonwealth's bill of particulars.

Our analysis begins with some important principles. The indictments, not the bill of

particulars, set forth the charges.[7] *See Powell v. Commonwealth*, 267 Va. 107, 131 (2004). The

documents must be read together, as "[t]he function of the bill of particulars is to supply

additional information concerning an accusation." *Id.* But the significance of the precise date or

time of an offense is of no greater significance in a bill of particulars than in an indictment.

---

[7] The indictments returned against Culbertson alleged that the offenses against A.W. occurred between January 1, 2013, and December 31, 2014. The Commonwealth later amended the offense dates to span January 1, 2010, through December 31, 2014.

- 13 -

"[W]here the date of the offense *is 'not of the essence of the offense,' nor 'shown to be significant*,' the Commonwealth is not required to charge that it occurred on a specific date . . . ." *Clark v. Commonwealth*, 78 Va. App. 726, 761 (2023) (quoting *Raja v. Commonwealth*, 40 Va. App. 710, 721 (2003)). "[T]he Commonwealth may even prove that the offense occurred on a date other than that alleged in the charging instrument." *Id.* (quoting *Raja*, 40 Va. App. at 721). The crimes of rape, sodomy, object sexual penetration, and aggravated sexual battery at issue here required that the child be younger than thirteen years old. *See* Code §§ 18.2-61, -67.1, -67.2, -67.3. The age limit for the indecent liberties offense is fifteen years old. Code § 18.2-370.

There is no dispute that A.W. was born in 2005 and therefore was younger than the specified statutory age when the particular offenses occurred. And where "there is no dispute that the crime, assuming it occurred, involved a minor child" younger than the age specified by the applicable statute, "[t]he allegation of time . . . is not of such constitutional import because time was not of the essence of the offense charged." *Clinebell v. Commonwealth*, 3 Va. App. 362, 367 (1986), *aff'd in part and rev'd in part on other grounds*, 235 Va. 319 (1988); *see also Farhoumand v. Commonwealth*, 288 Va. 338, 352 n.5 (2014) (confirming that the Supreme Court had "directly adopted the rationale of the Court of Appeals" when it affirmed that holding in *Clinebell*). Similarly, there is no dispute that Culbertson was older than eighteen at the time of the offenses, as required for conviction or sentence enhancement under the applicable statutes. *See* Code §§ 18.2-61, -67.1, -67.2, -370. As a result, the dates given in the bill of particulars are of little consequence here.

Even so, the totality of the evidence established that the offenses occurred within the dates given in the bill of particulars. The dates were tied to specific instances—October 13, 2012, when A.W.'s brother was born, and January 12, 2013, "when [Culbertson] was

- 14 -

incarcerated." A.W.'s mother and Fred testified that A.W.'s brother was born October 13, 2012, and Culbertson came to stay with them shortly after the birth. A.W. testified that her brother was a baby when the offenses occurred. A.W.'s family observed changes in her behavior in the fall of 2012, and she went to live with her grandmother mid-January 2013.

In denying the motion to strike, the trial court surmised that A.W.'s testimony—that the incident occurred in "springtime"—was reasonably based on her recollection that the weather was "warm." In any event, the jury heard all the evidence and was free to accept or reject the witnesses' testimony regarding when the offenses occurred. *See Rams*, 70 Va. App. at 38.

Both the indictments and the Commonwealth's bill of particulars sufficiently informed Culbertson of the relevant date of the crimes. Culbertson never argued in his motions to strike that he did not have sufficient notice of the nature of the charged offenses or that he was prejudiced. He argued only that the discrepancy went to A.W.'s general credibility. He made the same argument to the jury, which rejected it. The record supports the trial court's finding that the evidence was sufficient to prove that the crimes occurred within the periods stated in the bill of particulars.

### C. Application of Rule 5A:18

On appeal, Culbertson sets forth the statutes at issue and repeats trial counsel's arguments verbatim, but he does not identify any element of any of the offenses that was not supported by the evidence. The focus of his argument is that A.W.'s testimony was inherently incredible. He also contends that her testimony should be rejected because it was not corroborated by any medical or forensic evidence and did not exclude his "hypothesis of innocence" "that A.W. simply made up the allegations."

Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."

Under the rule, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpub'd order*, No. 040019 (Va. Oct. 15, 2004). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)); *see Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

"In a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law." *Sabol v. Commonwealth*, 37 Va. App. 9, 20 (2001) (quoting *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991) (en banc)). For this reason, arguments made to the jury cannot preserve legal objections to the sufficiency of the evidence. *See Commonwealth v. Bass*, 292 Va. 19, 32-33 (2016); *Sabol*, 37 Va. App. at 20. Such objections, however, can be preserved by making them in a motion to strike or a post-trial motion. *Bass*, 292 Va. at 32-33.

Defense counsel made arguments in his closing summation *to the jury* about A.W.'s credibility similar to those he raises on appeal, but he did not make those arguments in his motions to strike.[8] Nor did Culbertson file a post-trial motion. The law is clear, Culbertson did not preserve the claims he now raises in his brief. "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, [Culbertson] does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010); *see Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017) (citing *Edwards*, 41 Va. App. at 761, and declining to apply either the good cause or ends of justice exception to Rule 5:25 sua sponte).

---

[8] At trial, Culbertson argued in his motions to strike that the evidence was insufficient because A.W.'s testimony "essentially just defin[ed]" the elements of the offenses without describing his actions with enough detail.

Consequently, the new claims are precluded by Rule 5A:18.[9]  *See id.*; *Rompalo v.*

*Commonwealth*, 72 Va. App. 147, 155-56 (2020).

Because the sufficiency arguments Culbertson makes on appeal were "not presented to

the trial court," this Court will not consider them.  *See Clark*, 78 Va. App. at 767 (quoting

*Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)).

CONCLUSION

For these reasons, the convictions are affirmed.

*Affirmed.*

---

[9] Because consideration of this assignment of error is procedurally defaulted, we do not rule on the merits of Culbertson's challenge to A.W.'s credibility.  The jury credited A.W.'s testimony that Culbertson penetrated her vagina with his penis, his tongue, and his fingers; he licked her breasts and her vagina; and he ordered her to perform fellatio upon him.  *See generally Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (noting that a conviction for a sexual offense may be proven solely by the victim's uncorroborated testimony).  "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) (alteration in original) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).